CHICAGO INSURANCE COMPANY, A CORPORATION AND STANLEY ZEIDNER, PLAINTIFFS, v. SECURITY INSURANCE COMPANY OF HARTFORD, A CORPORATION, MURRAY BROTHERS, INC., HELEN WEST, SOPHIE FILIPSKI, JOHN A. HARRIS AND CHARLES BEVERLY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided May 23, 1969.

*Messrs. Zucker, Lowenstein, Gurny & Zucker,* attorneys for plaintiffs (*Mr. Milton Gurny,* appearing).

*Mr. Rocco L. D'Ambrosio, Gaffey, Webb, & McDermott,* attorney for defendants Security Ins. Co. of Hartford and Murray Brothers, Inc.

HERBERT, J. S. C. Plaintiffs sue for a judgment declaring what insurance coverage applies to the liabilities of Stanley Zeidner for damages resulting from an automobile accident in which he was involved on June 3, 1966. By counterclaim defendant Security Insurance Company of Hartford demands similar relief.

On June 3, 1966 Stanley Zeidner's father was the principal owner of defendant Murray Brothers, Inc. Stanley was an employee. The senior Zeidner was also principal owner of Murray Realty Co., Inc. and certain other companies. It was part of Stanley Zeidner's duties to collect rent and do other chores on occasion for Murray Realty Co., Inc., although he drew his salary from the more active company, Murray Brothers, Inc. Late in the afternoon of June 3 he was going on business to a building of the real estate company located on Mulberry Street in Newark. He was driving a rented Dodge automobile because the company-owned car which was treated as his, more or less exclusively, had been recently stolen. The rented car had been procured from a commercial company and had been rented in the name of Murray Brothers, Inc. on a credit card issued to that company.

At or near the point in Newark where Edison Place intersects the easterly side line of Broad Street, Stanley Zeidner had to bring the rented car to a stop because he found that vehicles ahead of him were not moving. Immediately in front of him was a bus which was at standstill. He got out of the rented car and went around to the front of the bus to investigate. There he found an automobile so parked as to prevent vehicles from moving easterly along Edison Place, the path which Stanley planned to take in order to get to the

Mulberry Street address. This parked car was owned by defendant Beverly. There was no driver in it, but it was occupied by a young boy. In the absence of the driver of the Beverly car Stanley Zeidner got into it, took the wheel and undertook to move it to a position which would permit traffic to flow along Edison Place. When he put the Beverly car in motion an accident followed which resulted in personal injuries to defendants West and Filipski and damages to the automobiles of defendants Harris and Beverly.

If Stanley Zeidner had been at the wheel of the rented Dodge automobile and had so operated it — rather than Beverly's car — as to cause the accident, then insurance coverage for Stanley would be furnished by the policy of defendant Security Insurance Company. That policy was issued to Murray Brothers, Inc. and affiliated companies including Murray Realty Co., Inc. The policy broadly states the undertaking of the insurance company as an obligation "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * *." However, following the quoted language there is a definition of "insured" and insofar as pertinent here it reads:

"Any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

There has been no argument made that Stanley Zeidner lacked permission to operate the rented car when he went on his rent-collecting assignment, but for plaintiffs, and particularly the Chicago company, it is argued that Stanley's unfortunate experience as driver of the Beverly car was such an extension of his use of the rented car that it should be covered by insurance as though the rented car, with Stanley at the wheel, had been the instrumentality which inflicted the damage. This argument is, of course, based upon the conception that clearing the planned route for the rented Dodge was so closely and necessarily related to the actual

use of that car as to be, in the eyes of the law, a part of that use.

I am not persuaded by plaintiffs' arguments. Stanley Zeidner might have waited for the driver of the Beverly car to appear and move it, as the driver of the bus immediately in front of the rented car was apparently doing. He might have maneuvered the rented Dodge out of its temporary *cul-de-sac* and taken another route to his destination on Mulberry Street. In short, the Beverly car was not a blockade on the only available road and one which Stanley Zeidner had to clear away himself if the road was to be opened to his rented car within any reasonable time.

A case close to the point is *Federal Ins. Co. v. Forristall,* 401 *S. W. 2d* 285 (*Tex. Sup. Ct.* 1966). There one Vallee had parked his Pontiac automobile at the Beaumont Country Club. Defendant George Z. Forristall, at or about the same time, was driving a car owned by his father, with his father's consent and permission. He parked that car immediately behind Vallee's vehicle. Later, when defendant desired to leave the country club he found that he was unable to do so because the car he had driven to the club was parked between the Vallee Pontiac and another car, and in order to get space in which to move his car he entered the Vallee Pontiac and released the gearshift from park position. Then he and another pushed the Vallee vehicle, but did so with such ineptitude that it rolled down an embankment, crashed into a boathouse and went into the river. Vallee instituted suit against the Forristalls, and the Forristalls sought a defense from Gulf Insurance Company. Gulf's policy provided liability coverage for injury to or destruction of property, etc., "arising out of the ownership, maintenance or *use* of the *owned* automobile * * *." The Forristalls maintained that Gulf was obligated to defend them under this clause and argued that the movement of the Vallee car was necessary so that the Forristall car could be extricated from the place where it was parked and put to use. Gulf maintained that there had been no use of the Forristall car within the con-

templation of the insurance clause. The Supreme Court of Texas held that Gulf was not obliged to defend the Forristalls, as the pushing of the Vallee vehicle was not within the liability policy insuring against damage from use of the insured's vehicle. In reaching this decision the court rested its holding on the Delaware case of *Wiebel v. Am. Farmers Mut. Ins. Co.,* 1 *Storey* 151, 140 *A. 2d* 712 (*Super. Ct.* 1958). In that case one Wiebel was asked by his neighbor Scherff to assist him in starting his (Scherff's) car. Wiebel drove his car into Scherff's driveway and pushed the Scherff car toward the highway. However, this was not enough to start the car, so the two men then manually pushed the Scherff car the remainder of the distance to the highway and onto the highway, fully intending thereafter to use the Wiebel car to push the Scherff car at a high enough rate of speed to start it. When Scherff's car was pushed manually onto the highway, a bad accident happened involving third persons. A suit was brought to declare the coverages available to both Wiebel and Scherff under their automobile liability policies. The Delaware court held that Wiebel at the time of the accident was not using his own automobile within the meaning of his policy. The court stated that although he had used his own car to push Scherff's in the driveway and although he was pushing the Scherff car manually so that later he could use his own to push Scherff along the highway, the manual pushing of the Scherff car did not arise out of, nor was it to be considered a use of the Wiebel car.

Chief Justice Hightower, in his opinion for the court in *Federal Ins. Co. v. Forristall, supra,* while commenting on the applicability of *Wiebel,* stated:

"If young Forristall had pushed the Vallee car with his own, then obviously, he would have been using his own car. However, when he elected to push the Vallee car manually, he put aside the *use* of his own car." (401 *S. W. 2d,* at *p.* 292)

An annotation in 89 *A. L. R. 2d* 150 *et seq.* (1963) has been cited by plaintiffs. It is entitled, "Automobile liability

insurance: what are accidents or injuries 'arising out of ownership, maintenance, or use' of insured vehicle." I find nothing there which requires a holding that the policy of defendant Security covered the accident caused by Zeidner when he drove the Beverly car. At *page* 154 the note writer said:

"It is well settled that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the phrase 'arising out of the ownership, maintenance or use' of a vehicle."

In my judgment, no such causal relation or connection can be found in the facts of this case. When Stanley Zeidner became the driver of Beverly's automobile he was beyond the scope of coverage provided by Security's policy.