48 N.J. 362 (1966)
225 A.2d 570
SELECTED RISKS INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
ALBERT ZULLO, ADMINISTRATOR, ETC., ET AL., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued October 25, 1966.
Decided December 23, 1966.
*364 Mr. George Y. Schoch argued the cause for the plaintiff-appellant.
Mr. Arthur W. Burgess argued the cause for defendant-respondent, Albert Zullo, Administrator, etc. (Messrs. Toolan, Haney & Romond, attorneys; Mr. John E. Toolan, of counsel).
Mr. Bernard H. Weiser argued the cause for defendant-respondent, Richard Yuhas.
Mr. Thomas F. Shebell, Jr. argued the cause for defendant-respondent, John Palladino, Jr. (Mr. Thomas F. Shebell, attorney).
Mr. Theodore Labrecque, Jr. argued the cause for defendants-respondents, Richard Keeter, et al. (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. George N. Arvanitis argued the cause for the Unsatisfied Claim and Judgment Fund of the State of New Jersey (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
The opinion of the court was delivered by PROCTOR, J.
This case concerns coverage under the omnibus clause of two automobile liability insurance policies issued by plaintiff, Selected Risks Insurance Company.
At the trial in the Law Division of plaintiff's suit for declaratory judgment, counsel for the plaintiff made an opening statement to the jury asserting that defendant Richard Keeter, the driver of an automobile involved in an accident, was not a person insured under the omnibus clause in policies issued by plaintiff to George A. Blumberg, the owner of the automobile, and defendant Marvin Keeter, Richard's father. *365 Other defendants in this suit are the representatives of passengers injured in the accident and the Unsatisfied Claim and Judgment Fund.[1] On motions of defendants at the conclusion of this opening, the trial court held that Richard Keeter was an insured under both policies and entered judgment for defendants. The Appellate Division affirmed. We granted certification. 47 N.J. 85 (1966).
The facts before the Court show that on April 2, 1963 Richard Keeter, a minor, while driving an automobile owned by Blumberg on the Englishtown-Jamesburg Road, Monmouth County, had an accident. As a result Richard Yuhas, John Palladino, and Benjamin Zullo, passengers in the car, were injured, Zullo fatally. Actions have been brought against Blumberg, as owner, and Richard Keeter, as driver, for injuries suffered by Yuhas and for the death of Zullo. In addition, claims have been made on behalf of Palladino, and for property damage allegedly sustained by Charles Godbolt and the New Jersey Bell Telephone Company.
The two policies issued by plaintiff and in force on the day of the accident contained the omnibus clause which follows:
"Persons insured:

* * * * * * * *
(a) with respect to the owned automobile,
(1) The named insured and any resident of the same household,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,

* * * * * * * *
(b) with respect to a non-owned automobile,
(1) the named insured.
(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission,
* * *." (Emphasis added) *366 Under these provisions Richard Keeter is an insured under Blumberg's policy if he is deemed to be operating the owned automobile "within the scope of such [Blumberg's] permission," and is an insured under his father's policy if his operation of the non-owned automobile is deemed "within the scope of such [Blumberg's] permission."
On the day before the accident Richard Keeter and Blumberg agreed that Richard would pick up Blumberg's car at the Englishtown Post Office where Blumberg and Marvin Keeter were employed, drive it to the Keeter home, wash it, and drive it back to the post office. This car-wash arrangement had occurred previously. Richard picked up the car keys from Blumberg around 1:30 P.M. the next day, April 2, drove the car to his home and washed it. After the car was washed, Richard and some friends who had been with him while the car was being washed, Palladino, Yuhas, and Zullo, all minors, started to return the car. However, on the way to the post office the boys decided to go for a soda. Richard drove out of town in a direction at right angles to the road to the post office, and the accident occurred about one mile out of town. It was the position of the plaintiff that this trip for a soda exceeded the authority given to Richard Keeter by Blumberg to operate the automobile, and therefore Richard was not a person insured under either policy because his use of the automobile was beyond the scope of permission given him by the owner, Blumberg.
The trial judge ruled on the authority of Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960), that Richard Keeter was insured under the omnibus clause of both policies.
In Matits the omnibus clause involved was the standard form which is in wide use throughout the country and includes as persons insured: "* * * any person or organization legally responsible for the use of the described automobile provided the actual use was with the permission of the policy-holder or such spouse." The Court there determined that valid and substantial policy considerations dictated a reading *367 of this clause to extend coverage to any permittee of the owner who had "initial permission" to use the automobile:
"It is our view that these latter rules [conversion and minor deviation] making coverage turn on the scope of permission given in the first instance render coverage uncertain in many cases, foster litigation as to the existence or extent of any alleged deviations, and ultimately inhibit achievement of the legislative goal. We think that the `initial permission' rule best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause in automobile liability insurance policies.
Accordingly, we hold that if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." Matits, supra, 33 N.J., at pp. 496-497.
The policy considerations and result of Matits were again considered with the same conclusions in Small v. Schuncke, 42 N.J. 407 (1964).
The plaintiff informs us that the omnibus clause here involved was changed in order to avoid the result of Matits. Indeed, examination of the Blumberg policy shows that the main part of the policy still contains an omnibus clause with the identical phrasing as that in Matits, and the different language here involved comes from an amendatory endorsement to the main part of the policy.
The plaintiff concedes that if the Matits rule applies, Richard Keeter is a person insured under the policies because Richard had initial permission to use the automobile. Plaintiff contends, however, that the changed language restricts the omnibus coverage to only those persons operating an automobile within the "scope of such permission" given by the owner and does not necessarily cover persons who have initial permission. Plaintiff argues that a jury question is presented whether Richard Keeter at the time of the accident was beyond the scope of Blumberg's permission to use the automobile. In support of this contention plaintiff urges that the extended omnibus coverage dictated by the Matits rule is *368 not required in all policies by the statutes relating to the financial responsibility of motorists. Plaintiff further urges that the narrowed omnibus coverage does not otherwise contravene public policy, and is therefore within the right of parties to a contract of insurance to make whatever agreements they choose. Kindervater v. Motorists Casualty Insurance Co., 120 N.J.L. 373, 376 (E. & A. 1938). Plaintiff does not contend that a distinction should be made between the liability limits voluntarily set by contract and those minimum limits set by the Motor Vehicle Security-Responsibility Law. See Atlantic Casualty Insurance Co. v. Bingham, 10 N.J. 460, 465-466 (1952).
The Unsatisfied Claim and Judgment Fund Law requires that the Director of Motor Vehicles determine as to any person who seeks to register a motor vehicle whether or not it is an "uninsured motor vehicle." N.J.S.A. 39:6-63. If the motor vehicle is uninsured, the person seeking to register it: (1) must pay additional registration fees (N.J.S.A. 39:6-63), (2) is precluded from suing the Fund if he is injured in his car by another uninsured motorist, and his spouse, parents and children are likewise precluded (N.J.S.A. 39:6-70(d)), and (3) must furnish proof of financial responsibility in the event he is in an accident causing damages in excess of $100 (N.J.S.A. 39:6-25). These substantial disadvantages imposed on persons registering uninsured motor vehicles evidence a strong legislative policy that all persons wrongfully injured by motor vehicles have financially responsible persons to look to for damages, and that persons registering motor vehicles provide such financial responsibility by automobile liability insurance. It is clear to us that plaintiff insurance company here knew that its policies would be offered to the Director of Motor Vehicles as proof that the automobiles to be registered were insured, and that the car owners, Blumberg and Marvin Keeter, reasonably relied on the insurance policy each had purchased as satisfactory compliance with the statute sufficient to avoid the disadvantages of registering an uninsured motor vehicle.
*369 When the Fund Law was enacted in 1952, an "uninsured motor vehicle" was defined as one not covered by an automobile liability policy conforming with the minimum standards of Section 24 of the Motor Vehicle Security-Responsibility Law (N.J.S.A. 39:6-46). This section requires that a motor vehicle liability policy offered as proof of financial responsibility must extend coverage to "the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured * * *." N.J.S.A. 39:6-46(a). This language is substantially the same as that of the standard omnibus clause construed in Matits in that it does not limit coverage by consideration of the scope of permission given and therefore extends coverage in accordance with the initial permission rule. Thus it is clear that as of the 1952 enactment an automobile would not be insured within the meaning of the Fund Law unless it contained an omnibus clause equivalent to that in N.J.S.A. 39:6-46(a).
Plaintiff contends that this was changed in 1955 by reason of an amendment of the definition of "uninsured motor vehicle" in the Fund Law:
"`Uninsured motor vehicle' means a motor vehicle as to which there is not in force a liability policy meeting the requirements of Sections 3 [N.J.S.A. 39:6-25], 24 [N.J.S.A. 39:6-46], 25 [N.J.S.A. 39:6-47] or 26 [N.J.S.A. 39:6-48] of the Motor Vehicle Security-Responsibility Law of this State, established pursuant to the provisions of chapter 173 of the laws of 1952, as amended and supplemented, and which is not owned by a holder of a certificate of self-insurance under said law." (N.J.S.A. 39:6-62; Emphasis added)
Plaintiff stresses the word "or," saying its meaning is in the disjunctive so that a policy satisfying N.J.S.A. 39:6-25 or 46 or 47 or 48 will qualify an automobile as insured. Plaintiff urges that section 25 does not call for any omnibus clause whatsoever, and concludes that the Legislature deliberately amended the Fund Law to say that an omnibus clause need no longer appear for an automobile to be deemed insured.
It is impossible to attribute to the word "or" its usual disjunctive meaning. This is so because the sections referred *370 to in the quotation above do not each deal with a separate policy of insurance. Together they speak of only one policy. N.J.S.A. 39:6-46 to 48 constitute a unit which specifies what kind of liability policy is necessary to prove financial responsibility. N.J.S.A. 39:6-46 is directed to motorists; N.J.S.A. 39:6-47 concerns itself with the special problems raised by nonresidents and their liability policies; and N.J.S.A. 39:6-48 is directed to insurance companies and informs them what provisions must be in such liability policies. These three sections mandate that liability policies described thereunder must have the statutory broad form omnibus clause.
This leaves only N.J.S.A. 39:6-25 to be considered. We think the fair meaning of the words "automobile liability policy" in N.J.S.A. 39:6-25(c) (1) indicates an insurance policy which meets the minimum standards of financial responsibility and omnibus coverage of permittees set forth in N.J.S.A. 39:6-46 to 48.
N.J.S.A. 39:6-25(a) and (b) require that both the operator and the owner (e.g. Blumberg here) of a motor vehicle which is in an accident causing more than $100 damages demonstrate financial responsibility by posting bond or showing an insurance policy which proves financial responsibility in order to retain the driver's license of the operator and the vehicle registration of the owner. N.J.S.A. 39:6-25(c) provides for certain exceptions to this necessity to show financial responsibility. If the vehicle was being operated without the owner's "permission, express or implied," the owner is excepted from N.J.S.A. 39:6-25(a) and (b) by N.J.S.A. 39:6-26(c). This would test the owner's obligation to meet N.J.S.A. 39:6-25(a) and (b) by the initial permission rule.
In N.J.S.A. 39:6-25(c) (1) another exception for owners is made, this containing the language seized upon by plaintiff:
"(c) This section shall not apply * * *
(1) to such operator or owner, if such owner had in effect, at the time of such accident, an automobile liability policy with respect to the motor vehicle involved in such accident * * *." *371 Under plaintiff's view such an "automobile liability policy" need not contain any omnibus clause. This would lead to the anomalous result that an owner, because he gave initial permission to an operator who then had an accident, would not be excepted under N.J.S.A. 39:6-26(c), but could escape the requirements of N.J.S.A. 39:6-25(a) and (b) by showing a policy which would not fulfill the statutory purpose of having financially responsible persons available to meet the claims of persons wrongfully injured in automobile accidents. See Howard v. American Service Mut. Ins. Co., 151 So.2d 682 (Fla. D. Ct. App. 1963); Annotation, 8 A.L.R.3d 388 (1966).
Finally, the words "automobile liability policy" do not occur in a vacuum but in one section of one of three detailed laws[2] having the common purpose of providing victims of automobile accidents with financially responsible persons to look to for damages. See Rikowski v. Fidelity & Casualty Co., 117 N.J.L. 407, 410 (E. & A. 1936). We believe that the words "automobile liability policy" in N.J.S.A. 39:6-25(c) (1) necessarily comprehend the minimum standards for a "motor vehicle liability policy" as set forth in N.J.S.A. 39:6-46 to 48.
The amended definition of an "uninsured motor vehicle" seems unintelligible if "or" is read to speak disjunctively as if four different insurance policies were in mind. In any event, we do not think that section 25 sanctions an insurance policy with less protection for victims of automobile torts (e.g. no omnibus clause) than that required in section 46. On the contrary, section 46 deals with any policy "furnished as proof of financial responsibility as provided herein." Section 46 embraces a liability policy used for purposes of section 25, which is a part of the very same enactment. Hence a policy *372 cannot qualify under section 25 unless it meets the demands of Section 46.
The above is supported by the history of the laws relating to the financial responsibility of motorists. Prior to 1952 a person involved in an accident was subject to call by the Director of Motor Vehicles to furnish a liability policy which met sections 46 and 48.
In 1952 the Legislature (L. 1952, c. 173, p. 555) modified R.S. 39:6-1 (now N.J.S.A. 39:6-31) to eliminate paragraph (g) which had required a motorist who had been in an accident to furnish proof of financial responsibility for damage claims arising out of future accidents. At the same time the Unsatisfied Claim and Judgment Fund Law was enacted. L. 1952, c. 174. The Fund Law required of a motorist who wanted to register an automobile as an insured motor vehicle that his policy conform to the minimum standards of section 24 (N.J.S.A. 39:6-46) which would include the broad form statutory omnibus clause. L. 1952, c. 174, p. 571. Thus in 1952 a motorist who had been in an accident was no longer required to furnish proof of financial responsibility for the future because all motorists who registered cars were already under strong incentives to have their automobiles be deemed insured motor vehicles, and only policies which conformed to N.J.S.A. 39:6-46 could meet the definition. In 1955 as noted above the definition of an uninsured motor vehicle was revised to that quoted earlier in this opinion in order to: "Correct an inadvertent error in the definition of uninsured motor vehicle." Statement attached to Senate Bill No. 169 which became L. 1955, c. 1.
Plaintiff does not say why the Legislature, in correcting its "inadvertent error," intended to allow motorists to avoid the disadvantages of registering an uninsured motor vehicle by presenting policies with omnibus coverage of permittees less broad than that required by N.J.S.A. 39:6-46(a). It is highly unlikely that the Legislature would want to narrow the coverage in this area of remedial legislation, and inconceivable that it would term such a narrowing the correction of an "inadvertent *373 error." Without clear language we will not find legislative intent to deny some innocent victims of motor torts the possibility of satisfying their just claims for damages against the insurance carrier of the owner of the motor vehicle who had given permission to the operator. Cf. Atlantic Casualty Insurance Co. v. Bingham, supra, 10 N.J., at pp. 466-467.
The word "or" in the definition of "uninsured motor vehicle" thus was used in the conjunctive, as indeed it grammatically may be used, and this determination is strengthened by the presence of the negative "not" in the definition. The amendment of the definition in 1955 made it clear that a policy agreeable to section 46 would serve to qualify a motor vehicle as an insured automobile whether or not that policy was required to be furnished under section 31 of the Security-Responsibility Act.
When a motorist presents a policy of insurance to the Director of Motor Vehicles in order to obtain the advantages of registering an insured motor vehicle, he is offering "proof of financial responsibility" as these words are used in N.J.S.A. 39:6-46 and 48. A policy so offered must have the broad form omnibus coverage set forth in N.J.S.A. 39:6-46(a). A policy which purports to have a more restrictive omnibus coverage is automatically amended to conform to the statutory standard. N.J.S.A. 39:6-48(b). These principles apply to the policies issued by plaintiff here, and therefore the policies are deemed amended to contain omnibus coverage no less broad than that of the statute.[3] And as we have said, the statutory omnibus clause extends coverage in accordance with the Matits initial permission rule.
The decision in Merchants Ind. v. Victory Iron Works, Inc., 80 N.J. Super. 7 (App. Div. 1963) affirmed on opinion below 42 N.J. 364 (1964), turned on the finding that neither the *374 employer-owner nor employee-operator had been required to furnish proof of financial responsibility before the accident involved occurred. 80 N.J. Super., at p. 14. The issue of whether the submission to the Director of Motor Vehicles of a policy of insurance in order to obtain the advantages of registering an insured automobile was itself an act of showing proof of financial responsibility was not raised or considered. We note also that the Merchants Ind. case involved a negligence action by one employee against a co-employee, an action now barred by statute where the employment relation is under workmen's compensation. N.J.S.A. 34:15-8.
For the reasons we have given, we are satisfied that by virtue of the Fund Act there may be no departure from the omnibus coverage described in section 46 of the Security-Responsibility Act, and therefore the clause before us must be read to accord with the public policy of this State as established by statute.
In the view we have taken of the case we need not consider the question of whether, as a matter of public policy apart from the specific statutory requirements, any contract of automobile liability insurance which authorizes an insured to permit other persons to use the described automobile as additional insureds under an omnibus clause can restrict the effect and scope of permitted uses by other than the initial permission rule of Matits.
We hold that Richard Keeter is a person insured under the liability policies issued by plaintiff to George A. Blumberg and Marvin Keeter.
Affirmed.
FRANCIS, J. (concurring).
I agree with the result reached in this case but not for the reasons outlined in the majority opinion.
In Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960), in construing an omnibus clause which provided coverage for the driver of an insured vehicle if "the actual use was with the permission of the policyholder," we held *375 that "if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms" of the policy. I take this to mean at the very least that when a permissive user is driving the insured car his actual operation at the time of an accident is covered unless that operation is expressly prohibited or forbidden.
The slightly different terminology appearing in the policies involved here, in my judgment, does not take the case out of the Matits rule. Keeter had initial permission to take the Blumberg car. There was no express prohibition against driving a short distance off route to obtain a soda. Certainly such deviation did not constitute a "theft or the like" of the car. Therefore, I would hold that Keeter's operation at the time of the accident was within the protection afforded by the omnibus clause of the policies.
I have serious doubts as to whether the various statutes referred to in the majority opinion can be tortured into a construction which makes every automobile liability policy contain the omnibus clause prescribed for certain types of such policies by N.J.S.A. 39:6-46(a). It does not seem reasonable to believe that the Legislature intended to accomplish that result by the circuitous route of the Unsatisfied Claim & Judgment Fund Law. If the law makers wished to impose a compulsory omnibus clause of the type specified in the Motor Vehicle Security-Responsibility Law, N.J.S.A. 39:6-23 to 60, on all automobile liability policies covering cars registered in New Jersey, it would have been a simple matter to say so in plain language. Since it is not necessary to promulgate such a ruling in the present case, the matter ought to await further definitive action by the Legislature.
For affirmance  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN  6.
For reversal  Justice HALL  1.
NOTES
[1] Also made defendants were Charles Godbolt and the New Jersey Bell Telephone Company, who claim property damage as a result of the accident, but who did not participate in this suit.
[2] Motor Vehicle Security-Responsibility Law, N.J.S.A. 39:6-23 to 60; Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 to 91; Motor Vehicle Liability Security Fund Law, N.J.S.A. 39:6-92 to 104.
[3] In pertinent part N.J.S.A. 39:6-46(a) reads:

"The policy shall: * * * insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured, * * *"