111 N.J. Super. 291 (1970)
268 A.2d 296
CHICAGO INSURANCE COMPANY, A CORPORATION, AND STANLEY ZEIDNER, PLAINTIFFS-APPELLANTS,
v.
SECURITY INSURANCE COMPANY OF HARTFORD, A CORPORATION, MURRAY BROTHERS, INC., HELEN WEST, SOPHIE FILIPSKI, JOHN A. HARRIS AND CHARLES BEVERLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1970.
Decided August 3, 1970.
*292 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Milton Gurny argued the cause for plaintiffs-appellants (Messrs. Zucker, Lowenstein, Gurny & Zucker, attorneys).
*293 Mr. Rocco D'Ambrosio argued the cause for defendants-respondents (Messrs. Gaffey, Webb & McDermott, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiffs appeal from a declaratory judgment holding that a policy of liability insurance, issued by respondent Security Insurance Company of Hartford (Security) to Murray Brothers, Inc., did not extend coverage to an accident in which Stanley Zeidner (Zeidner) was involved on June 3, 1966.
On the day in question Zeidner was an employee of Murray Brothers, Inc. (Murray), a corporation of which his father was the principal owner. Although he drew his salary exclusively from Murray, his employment required him to render services to other corporations, including Murray Realty Ltd., controlled by his father.
Late in the afternoon of June 3, 1966 he was involved in an accident which resulted in the institution of several suits against him. At the time of the accident he was driving a rented Dodge automobile because the company-owned car, which he generally used, had recently been stolen. The rental had been made in the name of Murray, on its credit card. While en route to one of Murray Realty's properties on Mulberry Street, Newark, he came to the intersection of Edison Place and Broad Street and found his way blocked by traffic. There was a bus immediately ahead of him. Eventually, he got out of the Dodge and walked past the bus to where he found a car stopped in a position that prevented the movement of the bus, and the vehicles behind it, into and along Edison Place. The car belonged to defendant Charles Beverly, but its only occupant at the time was a young boy. Zeidner got into the Beverly car with the intention of moving it so that traffic could proceed. As he attempted to start it the car went out of control and, after striking two vehicles and two pedestrians, ended up against a wall.
*294 Plaintiff Chicago Insurance Company (Chicago) had issued an automobile liability policy which extended coverage to Zeidner's operation of both the Dodge and the Beverly car. Security had issued a comprehensive public liability policy to "Murray Bros. Inc. Et. al.," Zeidner's employer, which covered Murray and its affiliated companies for rented as well as owned vehicles. By its policy it contracted to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages for injuries sustained by any person caused by accident, and arising out of the ownership, maintenance, or use of any automobile.
In this declaratory judgment action the two insurance companies sought an adjudication as to their obligations with reference to the damages sustained by third persons in the accident in question. The trial judge, in a written opinion, held that Security's policy, while covering the operation of the rented Dodge, did not extend coverage to Zeidner's operation of the Beverly vehicle as he attempted to move it. We affirm.
Both plaintiffs urge, in substance, that the "use" of the rented Dodge, covered by Security, extended to the efforts of Zeidner to remove the Beverly car which was obstructing traffic and preventing the movement of the Dodge down Edison Place. Thus, the core question before us is whether the use of the Dodge extended to Zeidner's activities after he left it and attempted to operate the Beverly car. If Zeidner's attempt to operate the Beverly car be found to amount to a use of the insured vehicle (the Dodge), the issue remains as to the apportionment of the liability between Chicago and Security.
The rule is well settled that if the controlling language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, the interpretation sustaining coverage will be applied. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961). The courts are bound to protect the insured to the full extent that any fair interpretation will allow. Kievit v. Loyal Protect. *295 Life Ins. Co., 34 N.J. 475, 482 (1961). Where the policy provision in question relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is to be taken of coverage, whereas if the clause in question is one of exclusion and exception, designed to limit protection, a strict interpretation is in order. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, supra, 35 N.J. at 8. More specifically, the language of the omnibus clause of a policy is to be construed broadly in favor of the insured and injured persons to effectuate a strong legislative policy of assuring financial protection for innocent victims of automobile accidents. Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507, 512-513 (1960). However, it appears to be universally recognized that causal relationship or connection must exist between the accident or injury, and the use of a vehicle, in order to support the conclusion that the accident arose out of the "ownership, maintenance or use" thereof. This is so even though the use of the vehicle need not be the direct and efficient cause of the injury sustained. Panhandle Steel Products Co. v. Fidelity Union Casualty Co., 23 S.W.2d 799 (Tex. Civ. App. 1929).
By its policy, Security contracted to cover Zeidner's operation of rented automobiles such as the Dodge here involved. In holding that Zeidner's operation of the Beverly car did not amount to a use of the Dodge, the trial judge found Federal Insurance Co. v. Forristall, 401 S.W.2d 285 (Tex. Civ. App. 1966) to be factually apposite. In that case defendant had parked his car immediately behind another car at the country club. When he came to leave, he found that someone had parked a car directly behind him so that movement of his vehicle was impossible. He thereupon elected to move the car ahead of him by releasing the gear shift and, with the help of another, attempting to push it manually. However, they did so in such an unskillful manner that the car rolled down an embankment, crashed into a boathouse and went into the river. When its owner *296 sought to recover from defendant, the latter's insurance carrier disclaimed on the ground that the accident did not arise out of the ownership, maintenance or use of his automobile. Defendant countered that since it was necessary that the car ahead be moved from the place where it was parked in order that his car could be moved, the movement of the parked car amounted to a use of his car within the provisions of his policy. The court held that the carrier was not obliged to defend, noting that, had defendant elected to push the car ahead with his own car, this would have amounted to use thereof, but when he elected to push the car manually, "he put aside the use of his own car." (401 S.W.2d at 292).
In Federal Insurance Co. v. Forristall the court relied principally upon Wiebel v. American Farmers Mutual Insurance Co., 1 Storey 151, 153, 140 A.2d 712, 713 (Del. Super. Ct. 1958). In that case, Wiebel, upon being asked by his neighbor to assist in starting the latter's car, drove his car to the neighbor's house and attempted to push the stalled car backwards from the driveway into the street. When this effort failed because their bumpers were not meeting properly on the uneven driveway, they proceeded to manually push the car backwards into the highway, intending thereafter to use Wiebel's car to push it forward. When the car reached the highway it was struck by another vehicle. The issue then arose whether Wiebel's policy entitled him to a defense as to suits subsequently entered against his neighbor and himself by those injured in the accident. The court ruled that the negligent pushing of the car into the highway did not arise out of the "ownership, maintenance or use" of Wiebel's automobile even though he intended to use it afterward to push the neighbor's car. It held:
Automobile insurance contracts protect against liability for accidents arising out of the "use" of vehicle [sic.] but they cannot be held to protect against liability for accidents where the use of the automobile was not connected with the accident or the creation of a *297 condition that caused the accident * * *. (Emphasis added.) Wiebel, supra, 1 Storey at 152, 140 A.2d at 714.
In attempting to distinguish Wiebel, plaintiffs urge that here "only the operation of the vehicle [the Dodge] had stopped  not its use or utilization." The distinction escapes us. In each case the driver left his vehicle to engage in an activity disassociated from it; in each case the driver intended to resume the use of his vehicle  Wiebel to push his neighbor's car after it reached the highway and Zeidner to drive on to Mulberry Street, where he had been headed in the first place.
In addition to seeking to distinguish the cases on which the trial judge relied, plaintiffs cite, in support of their position the following: McDonald v. Great American Insurance Company, 224 F. Supp. 369 (D.R.I. 1963); Merchants Co. v. Hartford Accident and Indemnity Co., 187 Miss. 301, 188 So. 571 (Sup. Ct. 1939); Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181 (Sup. Ct. 1944); Federated Mutual Implement & Hardware Ins. Co. v. Gupton, 241 F. Supp. 509 (E.D.S.C. 1965) and Gronquist v. Transit Casualty Company, 105 N.J. Super. 363 (Law Div. 1969). We find none of them to be apposite. Gronquist involved the liability of a passenger who had allegedly interfered with the operation of the insured vehicle by the driver thereof. It was there held that as a passenger riding therein he was making "use" of the automobile at the time of the accident, hence he was an additional insured entitled to a defense by the owner's carrier. There is nothing in that case to suggest that had he left the car in which he was riding in order to move another car which was blocking traffic, his status as an additional insured would have continued.
In McDonald v. Great American Insurance Company, supra, the insured had thrown a "cherry bomb" from an automobile in which he was riding as a passenger seriously injuring a third party. He was insured under a homeowner's policy and the owner of the car in which he was *298 riding was insured under an automobile policy. In an action to compel one of them to defend the suit against him, the court held that neither was obligated to do so. In Merchants Co. v. Hartford Accident and Indemnity Co., supra, a passenger in an automobile was injured when struck by certain poles which had been left in the highway by the driver of the insured truck after he had used the poles to extricate his truck from a ditch in which it had become stuck. Thus, the "condition" which had caused the accident had been brought about through the prior use of the truck.
In Schmidt v. Utilities Insurance Co., supra, the driver of an insured coal truck had used blocks in backing the truck from the street up onto the sidewalk. When he had finished, he left the blocks on the sidewalk and a pedestrian tripped on them, and was injured. Again, the court was dealing with a "condition" which had been brought about through the use of the truck. And in Federated Mutual Implement & Hardware Insurance Co. v. Gupton, supra, when the vehicle of one of his employer's customers became stalled on the highway because it was out of gas, plaintiff, a service station employee, responded in his employer's pickup truck. While the truck was parked in the rear of the customer's vehicle, and plaintiff was putting gasoline into the tank of the latter, the customer suddenly caused her car to back up, pinning him between the two vehicles. As the court there pointed out, the employer's insurance policy contemplated that the pickup truck would be used for the purpose of assisting disabled motorists. It was being used for that purpose and its equipment included the gasoline can from which plaintiff was then pouring gasoline, and tools for the purpose of making any necessary repairs or adjustments. Obviously, such a use would also require that the truck and its equipment would be returned, thereafter, to the service station. To substantially the same effect was Owens v. Ocean Acc. and Guarantee Corp., 194 Ark. 817, 109 S.W.2d 928 (Sup. Ct. 1937) where the plaintiff was injured when the stretcher upon which she was being carried to an ambulance *299 was negligently permitted to fall and the court held that the accident arose through the "use" of the ambulance.
We thus find no merit to plaintiffs' contention that the attempt to move the Beverly car amounted to a use of the Dodge because it was necessary that it be moved in order to enable the Dodge to proceed. Further, the trial judge found  and the facts support him  that it was not necessary to move the Beverly car in order for Zeidner to complete his errand. The Beverly car was on Edison Place, while the Dodge had been stopped in the middle of Broad Street. The tieup was a temporary one at most and there were alternate means whereby Zeidner could have reached his destination on Mulberry Street, if he did not wish to wait.
We need not here determine whether the negligent removing of an obstacle on a blocked highway by a motorist, where no other means of reasonably avoiding it are available, may not be held to arise from the use of the vehicle being driven by him.
The judgment of the Chancery Division is accordingly affirmed. By reason thereof, we find it unnecessary to pass upon plaintiffs' remaining point.