190 N.J. Super. 477 (1983)
464 A.2d 1128
AMERICAN HOME ASSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
HARTFORD INSURANCE COMPANY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT, AND ALLSTATE INSURANCE COMPANY, DEFENDANT-RESPONDENT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1982.
Decided April 28, 1983.
*479 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Francis X. Garrity argued the cause for appellant American Home Assurance Company (DeGonge, Velardo & Garrity, attorneys; Francis X. Garrity of counsel and on the brief).
*480 Eugene Smith argued the cause for respondent and cross-appellant Hartford Insurance Company (Henry S. Buchanan, attorney; Eugene Smith of counsel and on the letter brief).
John Haschak, III, argued the cause for respondent and cross-respondent Allstate Insurance Company (W. Stephen Leary, attorney; W. Stephen Leary on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff American Home Assurance Company (American Home) appeals from a summary judgment of the Law Division that dismissed its declaratory judgment action against defendants Hartford Insurance Company (Hartford) and Allstate Insurance Company (Allstate). American Home sought a declaration that the automobile liability insurance policies issued by Hartford and Allstate provided primary and concurrent insurance coverage to its assured William Stivale (Stivale) for all claims made against him by David Bilicki (Bilicki) and his wife Rosemary Bilicki arising out of an accident that occurred at Stivale's service station.
The facts essential to a resolution of the issues raised in this appeal are not in dispute. On January 14, 1978 Stivale, trading as Bill's Service Center, owned and operated a service station in Ironia, New Jersey. At about 4:30 that day Bilicki drove his private passenger Ford automobile to the station and asked Stivale to replace the spare tire on the front wheel with a tire that Bilicki had left with Stivale for repair earlier in the day. Bilicki drove the automobile into the center bay of the station so that it could be raised from the floor by means of an hydraulic lift. While Stivale was adjusting the pads of the lift in preparation for raising the automobile, Bilicki got out of the automobile, walked to the rear of the automobile and opened the trunk. Stivale also walked to the rear of the automobile to adjust the pads on its right rear side. At this time Stivale observed Bilicki "reaching in, sort of bending over" the trunk. Stivale then *481 moved to the front of the automobile and adjusted the right front pad. At this time, Stivale noticed that the trunk lid was still open, but he did not see Bilicki.
Stivale, assuming that Bilicki had left the service bay and had gone into the office, activated the lift. Bilicki, however, had not left the service bay. Rather, Bilicki had climbed into the trunk of the automobile in an attempt to locate the clip used to hold down the automobile's jack and then to secure the jack. While Bilicki was in the trunk, Stivale raised the automobile approximately six or seven feet above the floor of the service bay. Stivale stopped the lift and changed the tire. According to Stivale, just as he finished tightening the fourth wheel nut he heard a "sort of a thud" and then a "groan." He looked toward the rear of the automobile, saw Bilicki on the floor, and realized that Bilicki had fallen out of the trunk of the automobile. Bilicki's version of the accident coincides with that offered by Stivale. Bilicki testified during depositions that when he finished securing the jack in the automobile he stepped back out of the trunk and fell the six or seven feet to the concrete floor below, sustaining severe personal injuries.
Thereafter, Bilicki instituted suit against Stivale to recover damages for the personal injuries he sustained in the accident. His wife sued per quod. Bilicki charged that Stivale was negligent in maintaining the premises and in operating the machinery and equipment, specifically in raising the automobile on the hydraulic lift without issuing any warning to him.
American Home had issued a service station policy of insurance to Stivale, which was in effect on the day of the accident. This policy provided liability coverage for bodily injury "caused by an occurrence and arising out of the service station operation hazard," with a limit of $500,000 for each occurrence. The Ford automobile that Stivale was servicing for Bilicki was owned by Industrial Leasing Corporation. Allstate had issued a general automobile liability policy to Industrial Leasing Corporation that also was in effect at the time of the accident, and which *482 provided, among other coverages, comprehensive automobile bodily injury liability coverage with limits of $1,000,000 for each occurrence. Industrial Leasing Corporation had leased the automobile to PPG Industries, Inc., Bilicki's employer. Hartford had issued a casualty insurance policy to PPG Industries, Inc., which also provided comprehensive automobile bodily injury liability coverage with limits of $1,000,000 for each occurrence. This policy provided that the comprehensive coverage applied to "All Owned, Non-Owned & Hired Autos." The insuring clauses in the Allstate and Hartford policies were identical and provided coverage for bodily injury "caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile." Notice of Bilicki's claim and lawsuit against Stivale was given to Hartford and Allstate and demand made upon each of them to extend coverage to Stivale under their respective policies. Hartford and Allstate denied coverage.
American Home thereupon undertook the defense of the Bilicki suit on behalf of Stivale. Bilicki's claim was eventually settled for $100,000 and thereafter a consent judgment was placed on the record. American Home paid the full amount of the judgment and immediately instituted this action.
Hartford and Allstate denied that their policies afforded Stivale coverage for the Bilicki injury and moved for summary judgment. Allstate also argued that if coverage were found to exist under the two policies that covered the Bilicki automobile, Hartford's policy would be primary and Allstate's policy would provide excess coverage over and above that provided by Hartford. At the conclusion of argument, the trial judge held that if there were coverage under the Hartford and Allstate policies, Hartford would be primary and Allstate excess as between the two. However, the judge concluded that neither policy afforded coverage because there was not a substantial nexus between the use of the automobile in the circumstances and the injury, reasoning, in part, that

*483 The injury didn't flow out of the maintaining. The injury flowed out of your insureds putting it up on the lift and not looking to see whether or not Mr. Bilicki was in it.
This appeal and cross-appeal followed.
The principal thrust of American Home's contention is that the omnibus provisions of the Hartford and Allstate comprehensive automobile liability policies afforded coverage for this accident. Specifically, American Home claims that Stivale was a permissive user of the automobile; that the injury to Bilicki arose out of the use and/or maintenance thereof, and that the trial judge erred in holding that there was not a substantial nexus between the injury and the use or maintenance of the automobile. We agree and reverse.
The insuring and omnibus provisions of the comprehensive automobile liability provisions of the Hartford and Allstate policies are virtually identical. The Allstate policy provides, in pertinent part:
Coverage A  Bodily Injury Liability
Coverage B  Property Damage Liability
Allstate will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage A. bodily injury or
Coverage B. property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and Allstate shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but Allstate shall not be obliged to pay any claim or judgment or to defend any suit after the applicable limit of Allstate's liability has been exhausted by payment of judgments or settlements.
........
PERSONS INSURED
Each of the following is an Insured under this insurance to the extent set forth below:
(a) the Named Insured;
(b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;

*484 (c) any other person while using an owned automobile or a hired automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an Insured only if he is:
(1) a lessee or borrower of the automobile, or
(2) an employee of the Named Insured or of such lessee or borrower;
(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above.
None of the following is an Insured:
........
(v) any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured.
Our function in construing a policy of insurance, as with any other contract, is to search broadly for the probable comment intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes thereof. See Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567 (1962); Tooker v. Hartford Acc. and Indem. Co., 128 N.J. Super. 217, 222-223 (App.Div. 1974); Ins. Co. of State of Penna. v. Palmieri, 81 N.J. Super. 170, 179 (App.Div. 1963), certif. den. 41 N.J. 389 (1964). In this pursuit a broad and liberal view should be taken where the policy provision relates to the inclusion of persons other than the named insured within the protection afforded. See Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8 (1961); Tooker v. Hartford Acc. and Indem. Co., supra 128 N.J. Super. at 223; Chicago Ins. Co. v. Security Ins. Co. of Hartford, 111 N.J. Super. 291, 295 (App.Div. 1970). With these principles in mind, there cannot be even the slightest doubt that Stivale was an additional insured under the omnibus provisions of the Hartford and Allstate policies. The automobile was being used by Stivale for a purpose implicitly, if not expressly, permitted by the named insureds: to wit, the changing of a tire. For the omnibus provision to be effective there need only be permissive use. See Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. *485 Co. of N.Y., 33 N.J. 507, 513-514 (1960); see, also, Bellafronte v. General Motors Corp., 151 N.J. Super. 377, 382 (App.Div. 1977), certif. den. 75 N.J. 533 (1977); Liberty Mut. Ins. Co. v. O'Rourke, 122 N.J. Super. 68, 75 (Ch.Div. 1973); Capece v. Allstate Ins. Co., 86 N.J. Super. 462, 472-473 (Law Div. 1965).
Hartford's argument that Stivale is not an additional insured under the omnibus provisions of these policies because of the automobile business exclusion contained therein is clearly without merit. Every automobile policy offered as proof of financial responsibility in this State must have coverage no more restrictive than that mandated by the Motor Vehicle Security-Responsibility Law, N.J.S.A. 39:6-23 et seq. Thus, at the time of this accident, the policies at issue were deemed to contain the broad omnibus provisions required by N.J.S.A. 39:6-46(a) of that law. Motor Club Fire & Cas. Co. v. N.J. Mfrs. Ins. Co., 73 N.J. 425, 430, 435 n. 1 (1977), cert. den. 434 U.S. 923, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977); Odolecki v. Hartford Acc. & Indem. Co., 55 N.J. 542, 549 (1970); Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 372-373 (1966). N.J.S.A. 39:6-46 (repealed August 9, 1979 by L. 1979, c. 169, § 5), provided in part:
A motor vehicle liability policy furnished as proof of financial responsibility as provided herein shall be a policy of liability insurance issued by an insurance carrier authorized to transact business in this State or, in the case of a person not eligible for insurance under the automobile Assigned Risk Plan, by an eligible surplus lines insurer to the person therein named as insured, or in the case of a nonresident, by an insurance carrier authorized to transact business in any of the states or provinces hereinafter stated. The policy shall:
(a) Designate, by explicit description or appropriate reference, all motor vehicles with respect to which coverage is intended to be granted thereby, and insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured, against loss from the liability imposed upon the insured or other person by law, for injury to or the death of a person, other than a person who is covered, as respects the injury or death, by any workmen's compensation law, or damage to property, except property of others in charge of the insured or the insured's employees, growing out of the maintenance, use or operation of the motor vehicle in the United States of America. .. . [Emphasis supplied]
*486 Thus, the attempt to restrict or to limit the scope of the statutorily mandated omnibus provisions by excluding as an additional insured thereunder any person employed or otherwise engaged in duties in connection with an automobile business  that is, the selling, repairing, servicing, storing or parking of automobiles  violates the clear public policy of this State and any policy provision containing such exclusion is void. See Selected Risks Ins. Co. v. Zullo, supra, 48 N.J. at 372-373; Selected Risks Ins. v. Nationwide Mut. Ins., 133 N.J. Super. 205, 211-212 (App.Div. 1975); Unsatisfied Claim, etc., Fund Bd. v. Clifton, 117 N.J. Super. 5, 8-9 (App.Div. 1971); Hartford Acc. & Indem. Co. v. Travelers Ins. Co., 167 N.J. Super. 335, 344-347 (Law Div. 1979). See, also, Kish v. Motor Club of America Ins. Co., 108 N.J. Super. 405, 408-411 (App.Div. 1970), certif. den. 55 N.J. 595 (1970); Willis v. Security Ins. Group, 104 N.J. Super. 410 (Ch.Div. 1968), aff'd o.b. 53 N.J. 260 (1969). In the Unsatisfied Claim etc., Fund Bd. case, supra, this court held that when a customer's liability insurance policy covers any person using his automobile with his permission and within the scope thereof, a provision excluding coverage if the automobile is used by a person engaged in the automobile business is invalid. There the owner of the automobile left it at a service station for repairs. While an employee of the service station was raising the automobile on the lift, the automobile slipped and injured the employee's helper. In holding that the employee was an additional assured under the omnibus provision of the owner's policy, we stated:
Poland, as a permitted user under the terms of the omnibus provision, was entitled to protection under the policy for the duration of his permitted use. We see no sound reason why such rights should be lost, abridged or suspended during the period of the permitted use simply because the permittee may arguably have been engaged in the automobile business. To hold otherwise would have the effect of denying to injured persons the possibility of recovering for their damages.
This view we deem to be consonant with the legislative philosophy as interpreted in Zullo and the cases which have followed it. Nothing in the statute *487 evidences a legislative intention to the contrary. It makes no difference that the limitation was sought to be accomplished through an exclusionary provision of the policy. To the extent that such clause may have the effect of limiting the protection afforded the permitted user under the omnibus clause, it must be held invalid. Zullo, 48 N.J. at 370.
We are not concerned with the fact that the insurer may have inserted the automobile business exclusion in the policy to protect itself against the greater hazards involved in that business and that the company may have intended thereby to make the exclusion applicable to permitted users. Nor is it of any significance that Poland's employer could have obtained insurance covering the use of automobiles in its repair business. The existence of such insurance might involve a question of priorities with which we are not here concerned. Considerations of this kind must yield to the overriding policy expressed by the statute. See Zullo, supra. [117 N.J. Super. at 9-10]
We therefore hold that Stivale was an additional insured under the omnibus provisions of the Hartford and Allstate policies.
Although Stivale is an additional insured under these policies, we still must determine whether Bilicki's injury arose out of the maintenance or use of the automobile. The repair and service activity, to wit, the changing of a tire, in which Stivale was engaged when Bilicki was injured, may broadly be described as a "use" of the automobile within the meaning of the policies here under review. Compare Unsatisfied Claim etc., Fund Bd. v. Clifton, supra; Liberty Mut. Ins. Co. v. O'Rourke, supra; Selected Risks Ins. v. Nationwide Mut. Ins., supra; Gering v. Merchants Mut. Ins. Co., 75 App.Div.2d 321, 429 N.Y.S.2d 252, 254 (App.Div. 1980). However, we are of the view that such activity more precisely constitutes "maintenance" of the automobile. The term "maintenance" is variously defined as "acts of repairs and other acts to prevent a decline, lapse or cessation from existing state or condition," Black's Law Dictionary 859 (5 ed. 1979) and "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency." Webster's Third New International Dictionary 1362 (unabr. ed. 1971). Plainly, the changing of a tire represented an act of *488 repair or maintenance of the automobile. Therefore Stivale's activity was covered by the insuring clause of the policies. See Indiana Ins. Co. v. Winston, 377 So.2d 718, 720 (Fla.App. 1979), cert. den. 388 So.2d 1120 (Fla.Sup.Ct. 1980); Wall v. Windmann, 142 So.2d 537, 539 (La. App. 1962); Miller v. Auto-Owners Ins. Co., 411 Mich. 633, 309 N.W.2d 544, 546 (Sup.Ct. 1981); Truck Ins. Exch. v. Aetna Cas. and Sur. Co., 13 Wash. App. 775, 538 P.2d 529, 532 (Sup.Ct. 1975). See, also, 6B Appleman, Insurance Law and Practice § 4315, at (Buckley ed. 1979), at 339-340, 12 Couch on Insurance 2d (rev. ed. 1981), § 45:63, at 298-299.
We are also satisfied that the accident arose out of the maintenance of the automobile. Contrary to the approach taken by the trial judge the maintenance of the automobile did not have to be the direct and effective cause of the accident. Coverage is afforded if there is substantial nexus between the injury and the maintenance of the automobile. Thus, in Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App.Div. 1973), aff'd o.b. 65 N.J. 152 (1974), we explained that:
But we do not agree that the words "arising out of the * * * use" require or justify the interpretation that before coverage exists it must appear that the injury is a direct and proximate result, in a strict legal sense, of the use of the automobile. We think that such a construction would do equal violence to the normal meaning of those words. Specifically, the policy does not require that the injury be directly or proximately caused by the automobile itself or by its motion or operation. If such a meaning was intended to be projected by this important clause of the standard family automobile policy, it is difficult to understand why a phrase which clearly conveyed the idea of proximate causation, such as "caused by" or "resulting from," was not employed.
We consider that the phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. See 7 Am.Jur.2d, § 82 at 387 (1963). Whether the requisite connection or degree of *489 relationship exists depends upon the circumstances of the particular case. [at 37-38]
See, also, Bellafronte v. General Motors Corp., supra, 151 N.J. Super. at 383. See, also, Chicago Ins. Co. v. Security Ins. Co. of Hartford, supra, 111 N.J. Super. at 295.
Here it is manifest that there was a substantial nexus between Stivale's maintenance of the automobile and Bilicki's injury, thereby affording Stivale coverage for Bilicki's injury under the comprehensive automobile liability provisions of the Hartford and Allstate policies.
Finally, we point out that the extent to which American Home, Hartford and Allstate must contribute to Stivale's coverage is governed by the "other insurance" provisions of their respective policies. See Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 562 (1959); Selected Risks Ins. Co. v. Nationwide Mut. Ins., supra, 133 N.J. Super. at 212. Although the American Home "other insurance" provision is different from the Hartford and Allstate clauses (which are identical), each provides essentially for the proration of any loss based on the ratio that the coverage afforded by each policy bears to the total coverage afforded by all valid and collectible insurance. Under the clear and explicit language of these clauses, each policy provides primary and concurrent coverage for the Bilicki accident. This conclusion is not undercut by the exclusionary language of Endorsement No. 11, "Contingent Liability Coverage-Leased Automobiles," of the Allstate policy. It was on the basis of this endorsement that the trial judge declared that if the Allstate and Hartford policies provided coverage to Stivale, Hartford's policy provided the primary insurance and Allstate's policy provided the excess insurance. Here we find the judge to be in error. First, the endorsement expressly applies only to the named insured, not to an additional insured under the omnibus provisions of the policy. Second, we hold that this exclusionary clause constitutes an illegal escape *490 clause. It attempts to render the coverage afforded under the policy inapplicable to any automobile leased to others under a lease agreement that requires that bodily injury insurance be arranged and maintained for the named insured. Such an attempt is illegal and invalid. See Selected Risks Ins. Co. v. Zullo, supra; Willis v. Security Ins. Group, supra. See, also, 8A Appleman, op. cit., § 4910, at 457-470. Thus, we conclude that Allstate's policy provides primary coverage. On the other hand, the Hartford policy also provided primary coverage. The standard excess insurance provision with respect to hired and non-owned vehicles that is contained in the Hartford policy was modified and made inapplicable by the "Hired Automobiles  Specified Car Basis" endorsement. This endorsement covers "all automobile units leased on long term basis," which included the automobile here involved, and expressly declared that "The insurance applies as primary insurance." Hence, all three policies provided primary and concurrent insurance for Bilicki's injury, and therefore the loss must be prorated among them pursuant to the "other insurance" provisions of these policies. As we have pointed out above, Home Assurance's policy had a limit of $500,000, and Hartford's and Allstate's each had limits of $1,000,000, for a total of $2,500,000. Consequently, American Home was liable for 1/5th of the consent judgment recovered by Stivale, and Hartford and Allstate each were liable for 2/5th thereof.
Accordingly, the summary judgments under review, which declare that the Hartford and Allstate policies do not afford coverage to Stivale for Bilicki's injury, are reversed, and the matter is remanded to the trial court with direction that judgment be entered in favor of American Home against Hartford and Allstate, reimbursing it for all sums it paid in satisfaction of the judgment recovered by Bilicki over and above its pro rata share as determined in this opinion together with interest and costs. We do not retain jurisdiction.