FREDERICK JACOB WIEBEL V. AMERICAN FARMERS MUTUAL INSURANCE COMPANY, an Illinois corporation; ROBERT D. SCHERFF; WILLIAM C. HAGGERTY and VIVIAN C. HAGGERTY; HAZEL A. DULIN, Administratrix of the Estate of Thomas Clayton Dulin, deceased, and HAZEL A. DULIN.

ROBERT D. SCHERFF V. HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation of the State of Connecticut; FREDERICK JACOB WIEBEL and MADELINE WIEBEL, his wife; WILLIAM C. HAGGERTY and VIVIAN C. HAGGERTY, his wife; HAZEL A. DULIN, Administratrix of the Estate of Thomas Clayton Dulin, deceased, and HAZEL A. DULIN.

(*April* 17, 1958.)

CHRISTIE, J., sitting.

*Herman C. Brown* for American Farmers Mutual Insurance Company and Robert D. Scherff.

*Joseph H. Flanzer* for Hartford Accident and Indemnity Company and Frederick Jacob Wiebel.

Superior Court for Kent County, Nos. 139 and 209, Civil Actions, 1957.

CHRISTIE, J.:

On February 21, 1956, Robert D. Scherff came to the house of his neighbor, Frederick Jacob Wiebel, to obtain Wiebel's assistance in starting the Scherff automobile. Mr. Wiebel took his automobile, the title to which was in his wife's name, and drove into the Scherff driveway where the Scherff vehicle was parked. Wiebel drove past the Scherff car in the driveway and

turned around so that he faced toward the highway with the front of the Wiebel car facing the front of the Scherff car. The plan was that Wiebel would use his car to push the Scherff automobile backwards out onto the highway. Wiebel was then to drive around the Scherff automobile and push it forward along the highway until its motor could be started. Wiebel did use his automobile to push the Scherff automobile along the driveway toward the highway. On account of the ruts and holes in the driveway the bumpers of the two vehicles became engaged.

The two men got out of their automobiles and disengaged the bumpers. It was then decided that since the bumpers were not meeting properly on the uneven driveway, they should push the Scherff automobile out onto the hard-surfaced highway by hand where the Wiebel automobile could again be used.

It is alleged that the two men then pushed the Scherff car a few feet by hand so that it protruded several inches onto the hard-surfaced highway. At this point an automobile coming along the highway struck the rear of the Scherff car. The driver was killed and a passenger was injured. Three civil suits have been filed on account of that accident and each charges both Scherff and Wiebel with negligence.

We are not concerned with the merits of the actions now pending against these men. The matter now before the Court is essentially a dispute between Scherff's insurance carrier and Wiebel's insurance carrier as to which must provide a defense for the two men. Wiebel seeks a declaratory judgment requiring American Farmers Mutual Insurance Company, Scherff's insurance carrier, to provide a defense for him in the pending tort actions. Scherff, in turn, seeks a declaratory judgment requiring Hartford Accident and Indemnity Company, Wiebel's insurance carrier, to provide a defense for him in the pending tort actions.

Each policy of insurance provides in effect that the insurance company will defend any suit against the owner of the

automobile to which it applies or those using the automobile with the owner's permission where such suit arises out of "the ownership, maintenance or use of the automobile."

It is apparent that Scherff in pushing his own automobile just prior to the accident was "using" his automobile and that Scherff's own carrier, American Farmers Mutual Insurance Company, must provide a defense for him in the suits brought against him.

The real controversy, however, surrounds Wiebel's participation. Although Wiebel's vehicle did not push the Scherff vehicle into the position where the accident occurred, it was used to push the Scherff automobile a moment before. Furthermore, the plan was to use the Wiebel automobile a moment later. Thus, says Scherff, the use of the Wiebel automobile was an inseparable part of the project, and any accident which occurred before the completion of such project and in connection therewith arises out of the "use" of the Wiebel automobile.

Wiebel's carrier, in turn, contends that the accident and the tort suits against Wiebel cannot be said to have arisen out of "the ownership, maintenance or use" of the Wiebel automobile since it was obviously not in use under any reasonable construction of the insurance contract.

American Farmers cites authority for the proposition that liability insurance on an automobile towing another vehicle covers damage caused when the towed vehicle breaks loose. *Quality Dairy Co. v. Ft. Dearborn Casualty Underwriters, Mo. App. St. Louis* 1929, 16 *S. W.* 2d 613; 6 *Blashfield Cyclopedia of Automobile Law and Practice* § 3973.

American Farmers also cites *American Fire and Casualty Co. v. Allstate Ins. Co.*, 4 *Cir.*, 214 *F.* 2d 523 where the carrier of a towed vehicle was held to share liability with the carrier of the towing vehicle. See also *Merchants Co. v. Hartford Accident and Indemnity Co.*, 1939, 187 *Miss.* 301, 188 *So.* 571, 192

*So.* 566, where the insurance carrier was held liable under a similar policy for damages caused by poles that had been used to get the insured vehicle out of a ditch.

Based on these authorities, it is contended that if the Wiebel automobile had been pushing the Scherff automobile at the time of the accident, it would be up to Wiebel's insurance carrier to provide a defense. It is further argued that the same result would follow if the Wiebel automobile had been used to put the Scherff automobile into the position where the accident occurred. It appears that both of these arguments are well taken.

However, American Farmers must also argue that since the use of the Wiebel car was only temporarily interrupted by the hand pushing it is legally the same as if the Wiebel car had actually pushed the Scherff automobile to the spot of impact.

Hartford Indemnity, on the other hand, cites cases where the insurance carriers on ice trucks and other delivery trucks are not held liable for negligent acts of a truck driver in connection with delivery of the ice or other products after it has been removed from the truck. *Zurich General Accident and Liability Ins. Co. v. American Mutual Liability Ins. Co.,* 1937, 118 *N. J. L.* 317, 192 *A.* 387; *Kienstra v. Madison County Mutual Automobile Ins. Co.,* 1942, 316 *Ill. App* 238, 44 *N. E.* 2d 944; *American Casualty Co. v. Fisher,* 1942, 195 *Ga.* 136, 23 *S.E.* 2d 395, 144 *A. L. R.* 533.

In both lines of cases the insurance policies contain substantially similar language, so that in most of the cases cited "ownership, maintenance or use" are the pertinent words.

It appears to me that the "towing" cases and "ice" cases are not difficult to reconcile. In both lines of cases the insured vehicle was still in use at the time of the accident in the sense that broad projects (*i.e.* the towing to a destination or the series of deliveries) were not completed. But in the towing cases the automobile being towed was in active use. The fact that such use

is not the usual use does not prevent it from being a use. In the ice cases, the truck was not in active use when the tort occurred nor was its use closely connected with the cause of the tort. In fact, the use of the truck as to a particular delivery could be said to have ceased when the object to be delivered is removed from the truck.

Automobile insurance contracts protect against liability for accidents arising out of the "use" of vehicle but they cannot be held to protect against liability for accidents where the use of the automobile was not connected with the accident or the creation of a condition that caused the accident but merely with an unfinished project.

In the case at bar the use of the Wiebel automobile to push the Scherff automobile in a reverse position out of the driveway had been completed or abandoned prior to any acts that might be found to be a proximate cause of the accident. The apparent plan to use Wiebel's automobile again at a later time to push the Scherff car forward and in a different manner had not yet been put into effect. Thus, the ice cases are more nearly applicable than the towing cases, and the towing cases are not in conflict.

It is possible that several instrumentalities may be in use at once. However, when one tool has been temporarily cast aside as unsuitable and another substituted, the neglected tool cannot be said to be in use as to that very portion of the overall project for which the substitute was being used. The tort suits complain about only that portion of the Scherff-Wiebel undertaking which placed the Scherff automobile in the immediate path of the deceased's line of travel.

I rule that none of the acts complained of in the tort suits pending in this Court against Scherff and Wiebel arise out of the "ownership, maintenance or use" of the Wiebel automobile within the meaning of the insurance contracts. It follows that

Hartford Indemnity, the Wiebel insurance carrier, has no duty to provide defense counsel for either Scherff or Wiebel.

I have determined that the pending suits may arise in part out of Scherff's use of Scherff's automobile, and, therefore, his insurance carrier must provide a defense for him. I have also determined that the suits do not arise out of any use of the Wiebel automobile by Scherff or Wiebel and, therefore, the Wiebel insurance carrier has no contractual duty to provide a defense for either man. Finally, it must be determined whether the Scherff carrier has a duty to provide a defense for Wiebel.

The American Farmers policy provides protection to "the insured * * * his spouse * * * and * * * any person while using the automobile * * * provided the actual use of the automobile is by the named insured or such spouse or with the permission of either." Since both men are charged with taking part in pushing of the Scherff automobile, it is obvious that if any liability for such acts rests on Wiebel it rests on him by virtue of his alleged part in a "using" of the Scherff automobile with Scherff's permission. It follows that Scherff's insurance carrier has the primary duty to defend the suits against Wiebel.

The cases and authorities cited by both parties dealt with liability insurance carriers to pay damages rather than their duty to provide a defense in a law suit. In the policies before the Court the duty to defend and the duty to indemnify are largely tied in with the same definitions and phrases. Therefore, it was felt that the cited cases which also dealt with the same phrases were apropos. However, this opinion is limited to the only justiciable controversy now before it, *i.e.* the narrow issue of what company has a duty to provide the defenses in the pending cases.

American Farmers Mutual Insurance Co. must provide a defense under its policy for both Scherff and Wiebel.