No. 43,472

ESFELD TRUCKING, INC., a corporation, and GENERAL INSURANCE
CORPORATION, a corporation, *Appellees,* v. METROPOLITAN INSUR-
ANCE COMPANY, a corporation, *Appellant.*

(392 P. 2d 107)

Opinion filed May 9, 1964.

*Darrell D. Kellogg,* of Wichita, argued the cause, and *W. A. Kahrs, Robert
H. Nelson, H. W. Fanning,* and *Richard C. Hite,* all of Wichita, were with him
on the briefs for the appellant.

*Donald A. Bell,* of Wichita, argued the cause, and *Lawrence Weigand,
Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, Orval J. Kaufman,
J. Ruse McCarthy, J. L. Weigand, Spencer L. Depew,* and *Paul M. Buchanan,*
all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by defendant, in a subrogation action
between two insurance companies (Metropolitan and General In-
surance), from the trial court's judgment for plaintiffs and from
orders (1) sustaining plaintiffs' motion for judgment notwithstand-
ing the trial court's findings and vacating its prior judgment for
defendant, and (2) overruling defendant's motions for new trial,
for judgment notwithstanding the trial court's findings, to set aside
findings of fact and conclusions of law, and to adopt an additional
conclusion of law.

The parties entered into a stipulation of facts, the pertinent
portions of which are that on April 24, 1957, defendant Metropolitan
issued its combination automobile policy No. CA52918 effective

from May 1, 1957, to May 1, 1958, covering the operation of all motor vehicles belonging to its insured, the Great Bend Pipe and Supply Company, Incorporated, of Great Bend, Kansas, (hereafter referred to as Supply Company), which policy was marked exhibit "A" and attached to Metropolitan's amendment to answer.

On January 29, 1958, John A. Trimmell was performing his geological services on an oil well being drilled by Honaker-Davis Drilling Company on the Hulme B. Lease located approximately eight and one half miles southeast of Great Bend. Plaintiff, Esfeld Trucking, Incorporated, was performing services for the Supply Company consisting of pulling its semi-trailer truck onto the well site with the help of a winch line connected to Esfeld's caterpillar tractor which was being operated by Esfeld's employee, Roy A. Moser. During the pulling operation, Trimmell was injured when he was struck, knocked down and run over by the semi-trailer truck. The semi-trailer truck was specifically described in the Supply Company's insurance policy with Metropolitan, exhibit "A," as heretofore mentioned.

On January 12, 1960, Trimmell commenced an action against Esfeld seeking $25,494.50 damages for personal injuries. The petition filed in that action was made a part of the stipulation. Esfeld tendered the defense of such action to Metropolitan but it refused to defend Esfeld. Thereafter Esfeld filed pleadings in the case and began settlement negotiations with Trimmell through attorneys furnished by its insurer, General Insurance Corporation of Fort Worth, Texas (hereafter referred to as General Insurance), by reason of its comprehensive general liability policy No. C780251 issued to Esfeld and effective from October 1, 1957, to October 1, 1958.

On June 21, 1960, Esfeld paid Trimmell $2,000 together with $11.95 court costs in return for dismissal of the action with prejudice and a full settlement release signed by Trimmell and his wife freeing Esfeld from all liability resulting from the accident, which settlement was fair and reasonable. The $2,000 settlement was paid by Esfeld's check made payable to Trimmell and his attorney, and court costs were paid in cash by Esfeld's attorneys. Prior to payment of the settlement Esfeld had received $2,000, pursuant to a loan receipt agreement between it and General Insurance, identified as exhibit "B." The attorneys who represented Esfeld received $452.38 including $77.38 expenses.

It was further stipulated that on December 21, 1959, Metropolitan, acting for the Supply Company and Vernon Rocha, had paid $2,500 to Trimmell, who executed a covenant not to sue the Supply Company or Vernon Rocha for damages arising out of the accident. Finally, neither party contended that its respective policy did not cover the Trimmell accident insofar as its named insured was concerned. However, by this last stipulation General Insurance did not in any way waive its right to assert that its policy coverage was *secondary* and that Metropolitan's policy coverage was *primary* as to Esfeld for the Trimmell accident.

The case was tried on the stipulated facts including the petition in Trimmell's action against Esfeld and the two insurance policies.

On June 1, 1962, after oral argument the trial court advised the parties that judgment would be entered for defendant Metropolitan but after numerous posttrial motions had been argued, the trial court, in a letter dated July 20, 1962, reversed its position and stated that plaintiffs' *right over* theory must prevail.

In its formal journal entry of judgment the court accordingly entered judgment for Esfeld and fixed its attorney fee at $825.00. The journal entry further provided for the adoption of the stipulations above set out as the trial court's findings with one additional finding, requested by Esfeld, that at the time of the Trimmell accident, its employee, Moser, was *using* the truck of the Supply Company within the meaning of that term as used in Insuring Agreement III of Metropolitan's policy covering the Supply Company and that Esfeld was an organization *"legally responsible for the use"* of the semi-trailer truck within the meaning of Metropolitan's policy provision.

The essence of the trial court's conclusions of law was that at the time of the Trimmell accident both Moser and Esfeld were insured under Metropolitan's policy but Esfeld was liable for the injuries to Trimmell only under the doctrine of *respondeat superior,* Esfeld was not guilty of negligence except that it was liable for the negligence of its employee Moser, and under Kansas law, Esfeld "would have a cause of action over against its employee" to recover any damages which it paid to Trimmell. Hence payment of a settlement to Trimmell by General Insurance, either directly or indirectly by the loan receipt method, entitled General

Insurance to reimbursement through subrogation or from the proceeds of this action pursuant to the loan receipt agreement. Both Esfeld and General Insurance were proper parties plaintiff and all interested parties being before the court, any judgment rendered against Metropolitan should be rendered to plaintiffs to divide as their interests may appear. General Insurance did not insure Moser and under the circumstances its general liability policy afforded only *secondary* coverage to Esfeld. Metropolitan, having insured both Moser and Esfeld, therefore, provided *primary* insurance coverage and was *primarily* responsible to pay for the injuries to Trimmell and to pay all expenses in connection with Trimmell's claim. Esfeld and General Insurance were entitled to recover from Metropolitan all payments made in the Trimmell litigation, together with attorney's fees in this action, in the sum of $2,464.33 plus six per cent interest per annum from June 21, 1960, and Metropolitan should also pay the court costs in this action and reasonable attorney fees in the sum of $825.00. Judgment was entered accordingly.

This appeal comes before us, not in the usual sense of an insured undertaking to enforce its coverage under a policy issued by an insurance carrier, but as an action between two insurance carriers where one insurer, who paid a loss by reason of personal injury to a third person, is seeking, under subrogation, for indemnity against the other insurer. Many interesting questions are presented herein but the principal one is whether, under the facts and circumstances involved, the *use* of the vehicle (the semi-trailer truck) was covered under the following omnibus clause provision appearing under "Definition of Insured" in the policy of Metropolitan:

". . . and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

We believe the policy is clear and unambiguous and there is no need for judicial interpretation or the application of rules of liberal construction (*Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan. 528, 370 P. 2d 396) particularly since this is an action between two insurance companies who draw their own policies and should know the meaning of the words used in those policies as they are understood in the general field of insurance.

A detailed explanation of the definition of the word *use* appears

in 91 C. J. S., Use, pp. 513, *et seq.*, and includes a statement to the effect that as a noun *use* has been held to be synonymous with benefit and employment, and practically synonymous with enjoyment (p. 517), and as a verb, it has a well-understood meaning and a legal significance, having been variously defined as meaning to employ, to employ for any purpose, to employ for the attainment of some purpose or end, to avail one's self of, to convert to one's service, or to put to one's use or benefit, and the infinitive *to use* has also been defined as to hold, occupy, enjoy, or take the benefit of. (pp. 518-519.)

In determining the coverage of a policy such as our present one a court must consider whether the injury sustained was a natural and reasonable incident or consequence of the *use* of the vehicle involved for the purposes shown by the declarations of the policy though not foreseen or expected. It has been held that one who entered an automobile of another in order to move it a short distance so as to enable him to park his own automobile was *using* such car when the car rolled into a third car, causing injuries thereto, because the dictionary definition of *use* includes *to put into operation*. (7 Am. Jur., 2d, Automobile Insurance, § 82, and note 2 thereunder, p. 387.)

No serious question can be raised but that Esfeld and General Insurance could recover against Moser for Moser's negligence although, as admitted by both parties, it must first be established that Moser was *using* the semi-trailer truck so that he was covered under the above-quoted portion of Metropolitan's policy. (*Fenly v. Revell*, 170 Kan. 705, 228 P. 2d 905.)

The case of *Wiebel v. Amer. Farmers Mut. Ins. Co.*, 51 Del. 151, 140 A. 2d 712, contains a comprehensive and complete discussion of the word *use* as applied in "towing" and "ice" truck cases. Briefly, the facts of the Wiebel case were that an injured third party sought recovery under a policy carried on Wiebel's car which Wiebel had used in pushing the car of Scherff until he could no longer do so because the bumpers of the two cars became engaged. Scherff had then taken over the pushing operation of his car by hand resulting in the Scherff car going into a public thoroughfare and colliding with the injured third party's vehicle. The question there, as here, was that any liability would have to arise out of the ownership, maintenance, and *use* of Wiebel's car, the *pushing* vehicle. There the court's attention was brought to the fact that damages

have been allowed where caused by reason of a towed vehicle breaking loose from a towing vehicle. The opinion includes an interesting discussion of the question as it was answered in the "towing" and "ice" truck cases and it was stated that it has frequently been held that insurance carriers of ice trucks are considered to be relieved of coverage after the ice has been removed from the trucks.

We are impressed with the reasoning applied in the ice truck cases where the particular project under way at the time had been completed and consider it to be more applicable here than the reasoning in the towing cases because Trimmell's petition in his action against Esfeld, which was made a part of the stipulation of facts, alleged the pipe carried on the semi-trailer truck had been unloaded and, therefore, we think no further use of the truck was necessary; that any benefit, service, or enjoyment of the truck had been completed, and it was no longer covered under the policy of Metropolitan. In the Wiebel case, just cited, the opinion was limited to the only justiciable controversy before the court, i. e., the narrow issue of what company had the duty to provide the defenses in the pending cases, and it was stated that no liability had yet attached to anyone. It is obvious from the opinion that even for that limited purpose the adoption of the usual opinions in the towing cases where there was a continuous operation, in preference to the rule in the ice cases, was based upon a very narrow line of distinction, and further, that the towing cases referred to by the court involved the general proposition of an insured trying to enforce its coverage under the terms of the policy of its insurer where liberal rules of construction had been applied.

An extreme case of *use* controlling the coverage of policies issued by four different insurance companies is that of *Woodrich Construction Co. v. Indemnity Insurance Co.*, 252 Minn. 86, 89 N. W. 2d 412, which we cite merely for the benefit of the reader since the facts therein are quite complicated, and narration thereof would only tend to extend this opinion unnecessarily.

Both parties cite *Prickett v. Hawkeye-Security Insurance Company*, 282 F. 2d 294, a Kansas case arising in the Tenth Circuit Court of Appeals, which contains language quite compelling in considering our present case. It reads:

". . . the definitive provision in the policy, the endorsements upon the policy, and the statutory provision, were intended to protect the public. Their

purpose was to assure compensation to third persons, that is members of the public, for injury or death or for damage to property, arising out of negligent operations of motor carriers. [Citations] They were not intended to fix rights as between the insurance carrier and the operator of an insured motor vehicle whose negligence gave rise to death or personal injury of members of the public." (p. 298.)

In view of the facts, circumstances and discussion herein we are of the opinion the trial court was correct in its first ruling and in its adoption of defendant's findings of fact and conclusions of law, and that it erred in reversing this position and holding in favor of plaintiffs.

The trial court's judgment is reversed with directions to adopt defendant's suggested findings of fact and conclusions of law and enter judgment for the defendant for costs.

FONTRON, J., not participating.

ROBB, J. (dissenting): This appeal comes to us involving a question not heretofore submitted to this court and while I realize that in establishing a rule for the first time we do not have to follow decisions of other jurisdictions, I cannot agree that the rule applied in the majority opinion is the appropriate one under these facts and circumstances.

In the first place, I think the majority view makes for a very technical, strained, and narrow construction of the word *use*, in opposition to the liberal construction usually given to the wording of omnibus clauses of insurance policies. I agree with the statement in the opinion in *Liberty Mutual Ins. Co. v. Steenberg Construction Co.*, 225 F. 2d 294, to the effect that the word *use* in omnibus clauses is one of broad import and has been accorded flexible and unabsolute content as occasion has arisen to evaluate such clauses in the light of the circumstances of varying factual situations. Many cases recognize *use* as extending in "broad gauge" to the serving of some purpose or end of the permittee where right of control was such as to impose a legal responsibility upon the permittee "for its incidents, with those incidents having, as a matter of coverage consideration, a tie of practical relationship to the purpose or end which the named insured, either generally or specifically, has allowed the vehicle to serve." (p. 297.)

It was further stated in effect that while insurers can impose any coverage limitations as to permittees they desire, any such adopted limitation, however artful the language, will be judicially

scrutinized and will have to be able to stand on its own feet "without any room for rationally reading it in broad reconciliation and harmony with the fundamental scope of general omnibus-clause concept and design." (pp. 296, 297.)

In *Schmidt v. Utilities Ins. Co.*, 154 A. L. R. 1088, anno. 1096, drivers of a coal company's truck used wooden blocks to facilitate delivery into the coal bins of a hospital. Personal injury resulted through acts involving the wooden blocks after they were placed on the sidewalk and while neither the trucks nor the drivers were present. The court there held there was coverage arising out of the omnibus clause of the insurance policy because of the "ownership, maintenance, or use" of the insured trucks. It said the injury need not be the direct and proximate result of the use of an automobile to come within the coverage of a policy indemnifying against liability for damages by accident and arising out of the ownership, maintenance, or use thereof. (Headnote 3.)

Time and space prohibit the reiteration of the discussion beginning in the annotation of the same case at page 1096.

On construction of the term *use*, an annotation in 89 A. L. R. 2d 163, begins with this statement:

"In a relatively few cases the word 'use' in an 'ownership, maintenance or use' clause has been given a specific construction, and it appears that the word 'use' is the general 'catch-all' of the insuring clause."

While it is true the semi-trailer truck had to be towed to the place of unloading the pipe in our present case, the towing away of the truck from the place where the pipe was unloaded should be considered to be fully in contemplation of the *use* of the semi-trailer truck in my opinion.

The most applicable case and the one applying the better rule to my way of thinking is *American Fire & Casualty Co. v. Allstate Ins. Co.*, 214 F. 2d 523, where it was said:

"The towing of a jeep was not a use of it so unusual as to be beyond contemplation of parties to liability policy covering it, and accident occurring during tow arose out of the 'ownership, maintenance and use,' notwithstanding that jeep was not running on own power and that it carried no passengers, and insurer would be required to share liability with liability insurer of the towing automobile." (Headnote 1.)

In view of the foregoing authorities, I would affirm the judgment of the trial court since in arriving at that judgment, it obviously gave ample consideration to the stipulation of facts including the

allegations of the petition in Trimmell's original action against Esfeld.

WERTZ, J., joins in the foregoing dissenting opinion.

SCHROEDER, J., concurring: In my opinion whether the truck (technically called a tractor and semi-trailer) was loaded with oil field pipe or not, when it was being towed by a winch line connected to a caterpillar tractor, is immaterial.

The appellant, Metropolitan Insurance Company, a corporation, insured motor vehicles belonging to the Great Bend Pipe and Supply Company, Inc. of Great Bend, Kansas, which included the truck in question. General Insurance Corporation insured Esfeld Trucking, Inc. whose agent, Moser, was operating the caterpillar tractor in question.

The appellees (Esfeld Trucking, Inc. and General Insurance Corporation) must argue in this case that Esfeld and its employee, Moser, fall within the definition of an insured of Metropolitan's policy by reason of the additional insured provision. No question of permission is involved. The only question is whether or not the pulling of the truck by a winch line connected to the caterpillar tractor, being operated by Moser who was Esfeld's employee, was a use of the truck within the meaning of Metropolitan's policy of insurance.

It must be recognized that ambiguities in the wording of an insurance contract are to be construed in favor of an insured. But such rule has no application to language which is clear in its meaning. (*Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 370 P. 2d 396.) The terms "use" and "using" hardly seem ambiguous. Even aside from the plain meaning of the terms, as between insurers, the ambiguity rule should not apply.

Many courts have held that an omnibus clause or an additional insured provision in an automobile liability insurance policy should be given liberal interpretation in order to effectuate the public policy which affords a means for recovery by persons injured due to the negligence of another. (7 Appleman, Insurance Law and Practice, § 4354; *Snyder v. United States Mut. Ins. Co.*, 312 Ill. App. 337, 38 N. E. 2d 540; *Costanzo v. Pennsylvania Threshermen, etc., Ins. Co.*, 30 N. J. 262, 152 A. 2d 589.) Another reason for the liberal interpretation of omnibus clauses of automobile liability insurance policies is that in many jurisdictions such policies are

required by the motor vehicle financial responsibility laws. It has been held that laws of this type are based upon a public policy which affords injured persons protection. (7 Appleman, Insurance Law and Practice, § 4353.)

In *Prickett v. Hawkeye-Securities Insurance Company* (10th U. S. C. A. 1960) 282 F. 2d 294, the opinion of the court acknowledged that certain clauses in automobile liability insurance policies were subject to liberal interpretation where the foregoing public policies were a consideration. The court, however, distinguished between the interpretation to be made when the rights of the public are involved, and the interpretation to be made when fixing rights between parties other than insured members of the public. The foregoing distinction applies here where one insurer is attempting to recover from another insurer. In the *Prickett* case the court stated:

". . . But the definitive provision in the policy, the endorsements upon the policy, and the statutory provision, were intended to protect the public. Their purpose was to assure compensation to third persons, that is members of the public, for injury or death or for damage to property, arising out of negligent operations of motor carriers. . . . They were not intended to fix rights as between the insurance carrier and the operator of an insured motor vehicle whose negligence gave rise to death or personal injury of members of the public." (p. 298.)

Is the word "use" of sufficient scope to include the moving of a truck by a winch line connected to a caterpillar tractor in the absence of public policy requiring a liberal interpretation of the omnibus clause? I think not. No cases have been found in American jurisdictions considering facts identical to those here involved.

The term "use," as defined in Webster's New International Dictionary, includes some beneficial utilization or employment of the property in question within the definition. This impression is strengthened by the opinion in *Maryland Casualty Company v. Marshbank* (3rd U. S. C. A. 1955) 226 F. 2d 637, in which it is stated:

". . . the language of the clause seems so clear as to require no construction. The fallacy in the plaintiff's position is that the words 'use' and 'operation', which it seeks to equate as synonymous, are in this setting words of quite different meaning. For the 'use' of an automobile by an individual involves its employment for some purpose or object of the user while its 'operation' by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. . . ." (p. 639.)

A common sense definition of the word "use" as it applies to the present situation requires the truck's employment for some purpose or object of the user. In other words, within the meaning of Metropolitan's policy of insurance, Esfeld, through its employee, Moser, who was operating the caterpillar tractor with a winch line connected to the truck, was not utilizing or employing the truck belonging to the Great Bend Pipe and Supply Company, Inc. at the time of the accident. The sole function of Esfeld, through its employee, Moser, was to pull the truck by means of a winch line connected to the caterpillar tractor, and this was not an employment of the truck for some purpose or object of Esfeld. There was no *use* of the truck belonging to the Great Bend Pipe and Supply Company, Inc. within the meaning of Metropolitan's policy of insurance.

It follows that neither Esfeld nor its employee, Moser, was an insured within the meaning of Metropolitan's policy of insurance. Hence, the appellees are not entitled to recover.

For the foregoing reasons I concur in the court's decision.

PRICE, J., joins in the foregoing concurring opinion.