739 P.2d 218

**WESTFIELD INSURANCE COMPANY, an Ohio insurance company, Plaintiff-Appellee,**

v.

**AETNA LIFE & CASUALTY COMPANY, Defendant-Appellant.**

**No. 1 CA–CIV 8663.**

Court of Appeals of Arizona, Division 1, Department D.

May 12, 1987.

Ridenour, Swenson, Cleere & Evans by Harold H. Swenson, Lloyd J. Andrews, Phoenix, for plaintiff-appellee.

Jones, Skelton & Hochuli by Nicholas Adrahtas, Donald L. Myles, Jr., Phoenix, for defendant-appellant.

## OPINION

GRANT, Judge.

Appellant Aetna Life & Casualty Company (Aetna) appeals from summary judgment for appellee Westfield Insurance Company (Westfield) on Westfield's claim for declaratory relief and damages arising out of Aetna's denial of coverage on an automobile liability claim on which Westfield paid uninsured motorist benefits. The appeal presents the following issues for our consideration: (1) whether the trial court correctly determined that Jarvis, who was towing a disabled automobile covered by Aetna's automobile liability policy, was "using" the covered automobile within the meaning of the omnibus clause in Aetna's policy; (2) whether the trial court correctly determined that an exclusion in the Aetna policy for persons engaged in the business of selling, repairing, servicing, storing or parking vehicles was inapplicable; and (3) whether the exclusion, if applicable, was nevertheless void to the extent of the $15,-000 statutory minimum liability coverage required by the Uniform Motor Vehicle Safety Responsibility Act, A.R.S. § 28-1101 *et seq.*

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed. This litigation arose from a collision on August 16, 1983, between an automobile driven by Janet Hiney, who was insured by Westfield, and a tow truck driven by Martin Jarvis. At the time of the collision, the truck, owned by Jarvis' employer ABT Towing, was towing an automobile owned by William Decker and insured by Aetna. Andrea Candler was riding with Janet Hiney as a passenger, and was injured.

After the accident, Candler brought a personal injury action against Jarvis and ABT Towing. ABT's liability insurer became insolvent and Candler sought recovery against Westfield under Janet Hiney's uninsured motorist coverage. Westfield paid uninsured motorist benefits to Candler and thereafter brought this action against Aetna for reimbursement.

Aetna's liability policy on the automobile in tow provided in pertinent part:

LIABILITY COVERAGE

We will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

*"Covered person"* as used in this Part means:

. . . .

2. Any person using *your covered auto.*

EXCLUSIONS

We do not provide Liability Coverage:

. . . .

6. For any person while employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking of vehicles designed for use mainly on public highways, including road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of *your covered auto* by you, any *family member,* or any partner, agent, or employee of you or any *family member.*

Emphasis in original.

At the time of the accident ABT Towing was neither servicing nor repairing Decker's automobile. ABT Towing had a contract with AAA under which it would periodically perform road services like changing tires and jump-starting automobiles. ABT Towing also had a contract with the Mesa Police Department under which it towed and stored vehicles at the department's request.

On cross-motions for summary judgment, the trial court ruled for Westfield. It reasoned:

Based upon applicable rules of construction and case law, the Court finds and declares that there is no genuine issue of material fact and that the Defendants ABT Towing and Jarvis are "covered persons" under the PART A–LIABILITY COVERAGE portion of the Aetna policy.

When the accident at issue occurred, ABT Towing and Jarvis were towing the insured auto, and were therefore "using" the auto in such a fashion as to invoke coverage. Under similar circumstances, a clear majority of jurisdictions find that a "use" is occurring and that liability coverage applies. *Michigan Mutual Liability Co. v. Ohio Casualty Insurance Co.,* [123 Mich.App. 688,] 333 N.W.2d 327, 329–332 (CA Mich.1983); *Dairyland Insurance Co. v. Drum,* [193 Colo. 519,] 568 P.2d 459, 461–462 (Colo.1977); 15 A.L.R. 4th 10, 17, 30–39.

The Court further finds that ¶ 6 of the EXCLUSIONS portion of the policy does not apply and exclude ABT Towing and Jarvis from liability coverage. The evidence establishes that the accident at issue occurred while ABT Towing and Jarvis were employed in an independent contractor relationship and were engaged only in the business or occupation of towing the insured vehicle. Such activity is not specified in and is therefore not covered by ¶ 6 exclusions. This paragraph states, in pertinent part, that liability coverage is excluded only for specific activities.

"We do not provide Liability Coverage:

6. For any person while employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking of vehicles . . . including road testing and delivery."

These specific exclusions from liability coverage do not include an exclusion for towing. Therefore, ¶ 6 does not apply and any accident which occurs while a person is employed or engaged solely in the business of towing is covered by the omnibus clause of the policy.

The trial court later entered formal judgment in accordance with its minute entry, and Aetna filed this appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

"USING" THE TOWED AUTOMOBILE

Aetna now contends the trial court erred in holding that when Jarvis was towing Decker's automobile, he was "using" it within the meaning of Aetna's liability poli-

cy. Aetna urges that the trial court's interpretation of the word "use" is "expanded and tortured," and that the common-sense meaning of that word contemplates that the vehicle in "use" is being employed for some purpose or object of the user. Aetna further asserts:

> The following cases hold that a vehicle being towed is not being 'used' within the meaning of an automobile liability insurance policy which otherwise provides for coverage arising out of the ownership, maintenance, or use of the vehicle. [*Wiebel*] *Weibel [sic] v. American Farmer's Mutual Insurance Co.*, 51 Del. 151, 140 A.2d 712 (1958); *Hudford [Hartford] [sic] Accident & Indemnity Co. v. Wilson*, 356 So.2d 24 (Fla.App. D3 1978); *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.*, 193 Kan. 7, 392 P.2d 107 (1964); *Federal Insurance Co. v. Forristall*, 401 S.W.2d 285 (Tex.Civ. App. 9th Dist.1966); *Jones v. Insurance Company of North America*, 303 So.2d 902 (La.App.1974) [*overruled on other grounds, Boyer v. Johnson*, 360 So.2d [1164,] 1168 (La.1978)].

We reject both Aetna's analysis of these cases and citation to them for the proposition it contends the cases support. Aetna's assertion that *Wiebel, Hartford, Federal Insurance Co.* and *Jones* all held that a vehicle being towed was not being "used" within the meaning of an automobile liability policy is misleading. In *Wiebel* the insured's neighbor's car was stalled in his driveway and the insured drove his car into the driveway with the intention of using his car to push the neighbor's car into the street and thereafter push it to get it started. The attempt to use the insured's car to push the neighbor's car into the street was unsuccessful, and the insured and the neighbor pushed the neighbor's car into the street by hand. A third car then struck the neighbor's car, injuring the passenger and killing its driver. Under those circumstances the court held that the accident did not arise out of the ownership, maintenance or use of the insured's car. In *Federal Insurance Co.*, where the insured's son and a friend, whose car was blocked by another parked car which prevented them from driving the insured car out of its parking space, hand-pushed the other car out of the way causing it to roll down a hill, crash into a boathouse and drop into a river. The court concluded that, in so doing, the insured was not "using" his own car.

*Hartford* is similarly inapposite. There the court held that the insurer of a parked police car was not liable to a claimant whom the police had directed to push a disabled car off the road and who was struck and injured by a third car whose driver had been distracted by the police car's emergency lights. Likewise, in *Jones,* the court held that the claimant's injury did not arise out of the use of the insured truck, where the truck had been used to pull a tractor to get it started, and the claimant was injured in an accident while driving the tractor under its own power some time after it had been detached from the insured truck.

Of the cases on which Aetna relies, only *Esfeld Trucking, Inc.* supports the view for which Aetna argues. In *Esfeld* a semi-trailer from which oil piping had been unloaded was being towed by a caterpillar tractor when it injured Trimmell. The insurer of the caterpillar tractor paid Trimmell's claim, then sued the insurer of the semitrailer for reimbursement. Relying on *Wiebel, supra,* the court held for the insurer of the semitrailer. The court stated:

> We are impressed with the reasoning applied in the ice truck cases where the particular project under way at the time had been completed and consider it to be more applicable here than the reasoning in the towing cases because Trimmell's petition in his action against Esfeld, which was made a part of the stipulation of facts, alleged the pipe carried on the semi-trailer truck had been unloaded and, therefore, we think no further use of the truck was necessary; that any benefit, service, or enjoyment of the truck had been completed, and it was no longer covered under the policy of Metropolitan.

193 Kan. 7, 12, 392 P.2d 107, 111.

Despite Aetna's statement to the contrary, *Esfeld* plainly represents a minority

**568**

view. *See* Annot., 15 A.L.R.4th 30–39 (1982); 7A J. Appleman, *Insurance Law and Practice* § 4500 at 176–77 (1979). 12 Couch, *Cyclopedia of Insurance Law* § 45: 325, at 668 (2d Ed.1981) states:

> The term "use" within the meaning of an omnibus clause is not confined to motion on the highway but extends to any activity involved in the utilization of the covered vehicle in the manner intended or contemplated by the insured.

Although no Arizona cases have interpreted omnibus clauses under facts similar to those in the instant case, many decisions from other jurisdictions have done so. A leading case on point is *American Fire & Casualty Co. v. Allstate Ins. Co.*, 214 F.2d 523 (4th Cir.1954). In that case, Greene and Williams were riding in an automobile and were hit by a Chrysler driven by Kramer, who at the time was towing a jeep. Allstate, who insured Kramer's Chrysler, paid the claimants and sued American Fire and Casualty Co., the insurer of Kramer's jeep, for contribution. American Fire and Casualty's policy covered liability for injuries "arising out of the ownership, maintenance or use of the automobile." The court stated:

> The jeep was moving on the road by means of its own running gear and although it was not employing its own power unit, it was subject to the vicissitudes and dangers of travel on the public highway and was being propelled under circumstances not infrequently encountered. It cannot be said that the employment of the vehicle in such a manner was so unusual as not to have been within the contemplation of the parties to the insurance contract, and it would violate the usual rule of liberal interpretation of such an agreement in favor of the insured, if it should be held that a car being transported under the circumstances was not actually in use. *See Lamb v. Belt Casualty Co.*, 3 Cal.App.2d 624, 40 P.2d 311 [1935].

*Id.* at 525. *Accord Industrial Indemnity Co. v. Continental Casualty Co.*, 375 F.2d 183 (10th Cir.1967) (declining to follow *Esfeld, supra*, on similar facts). *See St. Paul Fire & Marine Ins. Co. v. Hartford Acci-*

*dent & Indemnity Co.*, 244 Cal.App.2d 826, 53 Cal.Rptr. 650 (1966) ("use" and "using" have comprehensive scope and do not demand that insured vehicle proximately cause the injury); *Dairyland Ins. Co. v. Drum*, 193 Colo. 519, 568 P.2d 459 (1977); *Bituminous Casualty Corp. v. Aetna Life & Casualty Co.*, 599 S.W.2d 516 (Mo.App. 1980); *Neice v. Nationwide Mut. Ins. Co.*, 100 Misc.2d 595, 419 N.Y.S.2d 799 (1978); *Hall v. United States Fidelity and Guar. Co.*, 107 Ohio App. 13, 155 N.E.2d 462 (1957). *See also Union Mut. Fire Ins. Co. v. King*, 113 N.H. 39, 300 A.2d 335 (1973). The court in *Michigan Mut. Liab. Co. v. Ohio Casualty Ins. Co.*, 123 Mich.App. 688, 333 N.W.2d 327 (1983) relied on *Neice, Bituminous Casualty Corp., Hall, St. Paul Fire & Marine Ins. Co.*, and *Dairyland* in holding that the driver of a towing vehicle was "using" the truck he was preparing to tow within the meaning of the omnibus clause of the truck's liability policy.

■ The foregoing interpretation is fully congruent with Arizona law. Like the courts who have adopted the majority view on this issue, Arizona courts have broadly construed the concept of "using" an insured vehicle. *See Mission Ins. Co. v. Aid Ins. Services*, 120 Ariz. 220, 585 P.2d 240 (1978). We believe that the cases representing the majority view are better reasoned, and accordingly adopt the majority view for Arizona. In the case before us, at the time of the accident, Jarvis was operating the tow truck on the road for the purpose of transporting Decker's automobile at Decker's request; Jarvis was actively controlling the movement of both the tow truck and Decker's automobile. In our opinion, Jarvis was "using" Decker's automobile at the time of the accident. The trial court therefore correctly held that Jarvis was an omnibus insured under Aetna's policy.

## EXCLUSION 6

We next consider Aetna's argument that the trial court erred in holding that exclusion 6 under the policy did not relieve Aetna of liability on Candler's personal injury

claim. For ease of reference, we restate exclusion 6:

> We do not provide Liability Coverage:
>
> ....
>
> 6. For any person while employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking of vehicles designed for use mainly on public highways, including road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of *your covered auto* by you, any *family member*, or any partner, agent or employee of you or any *family member*.

Aetna notes that Nicholas Micale, the owner of ABT Towing, testified that at the time of the accident ABT Towing regularly performed road services pursuant to a contract with the American Automobile Association and stored vehicles pursuant to a contract with the Mesa Police Department. Aetna argues that it is clear from this uncontradicted testimony that exclusion 6 of the Aetna policy is applicable, and therefore the accident was excluded from coverage. We cannot agree with Aetna's conclusion. Reference to the "business or occupation of selling, repairing, servicing, storing or parking of vehicles" if considered alone would support the interpretation that the exclusion applies if any part of the business activity of the person in question fell within those categories whether or not that person was performing any of those activities when the accident occurred. However, the limiting language "while employed or otherwise engaged in ..." supports the narrower interpretation that the exclusion applies only if the driver in question was actually engaged in one of the listed businesses or occupations with reference to activity involved at the time of the accident. "Towing" is not one of the specifically listed businesses or occupations in clause 6; nor was the towing of Decker's automobile incidental to ABT's intention to engage in one of the specifically listed occupations with reference to Decker's automobile. All that the record discloses is that ABT was engaged to tow the automobile and nothing else.

The purpose of the exclusion is to reduce the insurer's exposure where the insured automobile is used by someone employed in one of a concrete, named list of businesses, among which the towing business is *not* included. The Arizona Supreme Court has recently held: "We prefer, instead, to determine the meaning of a clause which is subject to different interpretations or constructions by examining the purpose of the clause, public policy considerations, and the transaction as a whole." *The Arizona Property and Casualty Insurance Guaranty Fund v. Helme* 735 P.2d 451 (Ariz.Sup.Ct.1987). *See Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 355, 694 P.2d 181, 183 (1984). Accordingly, we affirm the trial court's determination that exclusion 6 is inapplicable to this accident.

Because we affirm the trial court's conclusion that exclusion 6 of Aetna's policy does not apply to this case, we do not reach the question of whether exclusion 6 is void because it conflicts with A.R.S. § 28–1170(B)(2) to the extent of the statutory minimum liability coverage. *Cf. State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co.*, 149 Ariz. 179, 717 P.2d 858 (1986).

Westfield has requested an award of attorney's fees on appeal pursuant to rule 21, Arizona Rules of Civil Appellate Procedure, and A.R.S. § 12–341.01. We grant the request. Westfield may establish the amount of its attorney's fees award by complying with rule 21(a) and (c)(2).

Affirmed.

EUBANK, P.J., and HAIRE, J., concur.