Essie Lee JAMESON, as personal representative of the Estate of Viola Lee Gordon, deceased, and Verrelle Gordon, Plaintiffs,

v.

Marvin R. PACK, P & H Oil Field Service, Inc., Tow Service, Inc., David M. Martinez, Defendants and Third–Party Plaintiffs,

OMEGA RESOURCES CORPORATION, Third–Party Plaintiff,

v.

MID–CONTINENT CASUALTY COMPANY, KFB Insurance Company, Third–Party Defendants,

Kimberly Sue GORDON, Plaintiff,

v.

TOW SERVICE, INC., David M. Martinez, Defendants and Third–Party Plaintiffs,

v.

MID–CONTINENT CASUALTY COMPANY, Third–Party Defendant.

Donald James CLIFFORD, as personal representative of the Estate of Raymond Floyd Gordon, Jr., Deceased, Plaintiff,

v.

TOW SERVICE, INC., David M. Martinez, Defendants and Third–Party Plaintiffs,

v.

MID–CONTINENT CASUALTY COMPANY.

Essie Lee JAMESON, as personal representative of the Estate of Raymond F. Gordon, Deceased, Verrelle Gordon, Norwest Bank as Conservator of the Estates of Mary Gordon, a minor, Brenton Gordon, a minor, Plaintiffs,

v.

Marvin R. PACK, P & H Oil Field Service, Inc., Defendants,

Tow Service, Inc., David M. Martinez, Defendants and Third–Party Plaintiffs,

OMEGA RESOURCES CORPORATION, Third–Party Plaintiff,

v.

MID–CONTINENT CASUALTY COMPANY, Third–Party Defendant.

Civ. A. Nos. 90–2308–JWL, 91–2478–JWL, 91–2479–JWL, 92–2158–JWL.

United States District Court, D. Kansas.

Feb. 22, 1993.

David Davies, Steven D. Alexander, Chartered, Overland Park, KS, Randall J. Shanks, Gallner & Gallner, P.C., Council Bluffs, IA, Raymond McGaugh, Chicago, IL, for Essie Lee Jameson, as personal representative of the Estate of Viola Lee Gordon, Verrelle Gordon.

William H. Sanders, James Borthwick, Paul F. Pautler, Jr., Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Marvin R. Pack, P & H Oil Field Service, Inc., Omega Resources Corp., Mid–Continent Cas. Co.

Paul P. Hasty, Jr., D'Ambra M. Howard, Robert J. Luder, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, for

Tow Service Inc., David M. Martinez, KFB Ins. Co., Inc.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is currently before the court on the motion for summary judgment (Doc. # 202) filed by third party defendant KFB Insurance Company, Inc. ("KFB"). For the reasons set forth below, KFB's summary judgment motion is granted.

This case arises out of a collision which occurred on May 26, 1990, on Highway I-35 in Sumner County, Kansas. On that night, a motor vehicle occupied by several individuals struck a hay wagon which was being pulled by defendant Marvin R. Pack with a pickup truck belonging to P & H Oil Field Service, Inc. ("P & H").[1] Pack's pickup truck had become stuck in the median of the highway, and the hay wagon was protruding into the highway when it was struck by the vehicle.

Prior to the collision, David M. Martinez, who was operating a flatbed truck owned by Tow Service, Inc., had attempted to assist Pack's disabled pickup and hay wagon. Martinez had hooked the flatbed truck to Pack's pickup with a chain and attempted to pull the pickup out of the median. However, Martinez' attempt to extricate Pack's vehicle was not successful. Martinez then unhooked the two vehicles. Following his unsuccessful effort at towing the pickup truck, Martinez was going to attempt to extricate Pack's vehicles by placing the flatbed truck's "stinger"[2] under the hay wagon in an effort to lift the wagon and allow the pickup truck to go forward. Before Martinez could implement this plan, however, the collision occurred. There is no dispute that at the time of the collision the flatbed truck was unhooked and completely disengaged from the Pack pickup and hay wagon.

The flatbed truck was covered under an insurance policy issued by KFB (the "KFB policy"). On February 4, 1992, Pack, P & H and Omega (the "Pack defendants") filed a third party complaint against KFB. In the third party complaint, the Pack defendants contend that at the time of the collision, Pack was "using" the flatbed truck, as defined in the KFB policy, and that therefore the Pack defendants are entitled to coverage under the permissive use clause of the KFB policy, including their defense costs and indemnity for any recovery by plaintiffs against them. KFB denies that the Pack defendants are entitled to coverage under the permissive use clause of the KFB policy, and through the current summary judgment motion seeks summary judgment on the third party complaint.[3]

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a rea-

---

1. The pickup truck operated by Pack was also named as an insured vehicle in an insurance policy issued to defendant Omega Resources Corporation ("Omega").

2. The "stinger" was a device on the flatbed truck that allowed the flatbed to carry a second vehicle. It consisted of a bar that slid out of the truck and had lifting capability.

3. KFB previously filed a motion for summary judgment on the third party complaint (Doc. # 107). At a hearing following the execution of a Partial Settlement and Release Agreement between the plaintiffs and the Pack defendants, it was believed that the issues raised in KFB's summary judgment motion were no longer pertinent to the case, and the court proceeded to moot the motion. Because it is now apparent that the arguments made in that earlier motion remain at issue, in considering the present summary judgment motion the court shall incorporate the parties' arguments from the prior summary judgment motion (Doc. # 107), the response and cross-motion for summary judgment (Doc. # 115), and the various responses and replies pertinent to those motions. Along the same lines, the cross-motion for summary judgment (Doc. # 115) was also officially mooted as a

sonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

■ The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

■ Under *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this court is bound by the choice of law provisions of the forum state of Kansas. Kansas follows "lex loci contractus", meaning that the law of the state where the contract is made applies to the provisions of the contract. *See Civic Associates v. Security Ins. Co.,* 749 F.Supp. 1076, 1079 (D.Kan.1990); *Sims v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 685 P.2d 321 (1984). Both KFB and Tow Service are Kansas corporations, and the KFB policy covering the Tow Service flatbed truck was negotiated and signed in Kansas. Because the KFB policy was issued in Kansas, we conclude that the KFB policy is governed by Kansas law. *Id.*

■ The KFB policy provides, under its definition of who is an insured person, that "anyone else is an insured while using with your permission a described auto you own, hire or borrow ..." The Pack defendants contend that they were insured persons under the KFB policy because they were permissive users of the flatbed truck at the time the collision occurred. The KFB policy contains no definition of "using." We must therefore look to the law of Kansas in interpreting the meaning of the word. *See Civic Associates, Inc. v. Security Ins. Co.,* 749 F.Supp. 1076 (D.Kan.1990).

The court finds that, based on the reasoning in *Esfeld Trucking, Inc. v. Metropolitan Ins. Co.,* 193 Kan. 7, 392 P.2d 107 (1964), the Pack defendants are not covered by the permissive use clause in the KFB policy. In *Esfeld,* the plaintiff was injured by a semi-trailer truck which was being pulled to a well site by means of a winch line connected to a caterpillar tractor. After both parties had settled with the injured individual, the insurer of the caterpillar, General, brought a subrogation action against the insurer of the semi-trailer, Metropolitan, claiming that the operator of the caterpillar was a permissive user of the semi-trailer truck.

The Court decided that the operator of the caterpillar was not "using" the semi-trailer truck at the time of the accident. *Id.* at 12. The two-judge principal opinion based its decision on the fact that the semi-trailer had already been unloaded when the accident

result of the hearing in connection with the partial settlement. The court deems that motion to have been resurrected by the parties as a result

of the motion by KFB which is at issue here and it is denied for the same reasons that KFB's motion (Doc. # 202) is granted.

occurred, even though it had not yet been disengaged from the winch. The court stated:

> We are impressed with the reasoning applied in the ice truck cases where the particular project underway at the time had been completed and consider it to be more applicable here than the reasoning in the towing cases because Trimmel's petition in his action against Esfeld, which was made a part of the stipulation of facts, alleged that the pipe carried on the semi-trailer truck had been unloaded and, therefore, we think no further use of the truck was necessary; that any benefit, service, or enjoyment of the truck had been completed, and it was no longer covered under the policy of Metropolitan.

*Esfeld,* 193 Kan. at 12, 392 P.2d 107.

Two concurring justices in *Esfeld* argued that, regardless of whether the semi-trailer was unloaded, the caterpillar's winch-line towing of the trailer was not a "use" of the trailer under the common sense definition of the word. *Id.* at 17, 392 P.2d 107. The concurrence stated that because the semi-trailer was not employed for some purpose or object of the caterpillar operator, there was no use of the towed truck. *Id.*

The court finds that at the time of the collision in this case, Martinez had completed the act of towing the Pack vehicle (albeit unsuccessfully). Martinez had disengaged the chain between the two vehicles and was making no attempt to extricate the Pack vehicle when the collision occurred. Because we find that Martinez had completed his attempt to tow the Pack vehicle prior to the

time the collision occurred, based on the *Esfeld* decision, we believe that the Kansas Supreme Court would not find that the Pack defendants were using the flatbed truck at the time the collision occurred.[4]

The Pack defendants make a public policy argument that they are entitled to coverage under the KFB policy arising out of an earlier ruling made by the court in this case involving a third party complaint filed by Martinez and Tow Service against Mid–Continent Casualty Company. The third party complaint filed by Martinez and Tow Service was a virtual mirror image of that filed by the Pack defendants. Martinez and Tow Service claimed that they should be covered as permissive users of the Pack pickup under an insurance policy issued by Mid–Continent Casualty Company on that vehicle. In ruling on a summary judgment motion filed by Martinez and Tow Service in connection with their third party complaint, this court found that Martinez and Tow Service were covered under the permissive use clause of the Mid–Continent policy. This court came to that conclusion due to the fact that, because the Mid–Continent policy had been executed and issued in Oklahoma, Oklahoma law applied to interpretation of the Mid–Continent policy. Based upon the holding in *Industrial Indemnity Co. v. Continental Casualty Co.,* 375 F.2d 183 (10th Cir.1967),[5] which approves a broader interpretation of the word "using" in connection with a permissive use clause under Oklahoma law than does the Kansas court in *Esfeld,* this court found that Martinez and Tow Service were "using" the Pack vehicle at the time the collision occurred and

4. The Pack defendants attempt to distinguish the *Esfeld* case by arguing that because Martinez intended to make another attempt to extricate the Pack vehicle by using the "stinger" device on the flatbed truck, Martinez had not yet finished rendering assistance and the Pack defendants were therefore still "using" the flatbed truck when the collision occurred. To the contrary, however, there is no question that Martinez' effort to *tow* the Pack vehicle had been completed prior to the time of the collision. Martinez had completely disengaged the vehicles and was no longer making an attempt to tow the Pack vehicle. It is the act of towing which arguably causes the Pack defendants to be deemed to have been

"using" the flatbed truck. The court believes that the mere fact that Martinez intended to make another attempt to extricate the Pack vehicle does not mean that the Kansas Supreme Court would find that the Pack defendants were "using" the flatbed truck when the collision occurred, at a time when the vehicles were disengaged and no attempt was being made to tow the Pack vehicle.

5. *Industrial Indemnity* was a Tenth Circuit case that applied Oklahoma law in determining what constituted "using" a vehicle for purposes of insurance coverage in a towing situation. Noth-

therefore were covered under the Mid–Continent policy.

The Pack defendants argue that because this court found Martinez and Tow Service to be permissive users of the Pack vehicle, it should necessarily follow that the Pack defendants were users of the flatbed truck. The Pack defendants cite no authority for this proposition, but instead make a variety of fairness arguments, including: (1) "that justice is better served by a result which is consistent with the court's prior ruling;" (2) that "if the two states are in conflict on this issue, we submit that the court should not enforce the Kansas rule because it is better public policy to provide a consistent result for all parties on the same set of facts than it is to follow general principles which lead to conflicting results," and (3) "equal justice under the law is a more important principle than a slavish devotion to technical rules."

The court finds no merit in the Pack defendants' argument. Far from being a "slavish devotion to technical rules," the court believes that adherence to the Kansas rule of lex loci contractus is plainly proper, and does not lead to unfair treatment. As stated before, the Pack defendants have offered no authority to support their position that the court should abandon its choice of law guidelines simply to reach a consistent result between the insurance policies issued in different states, nor has this court been able to locate any such authority. In fact, both Mid–Continent and KFB are presumed to be familiar with the laws of the states in which they made insurance contracts, and that those contracts would be interpreted under the applicable state law. The mere fact that there are differing results under the policies in this case due to the fact that the Mid–Continent policy was issued in Oklahoma, which may have a more liberal interpretation of permissive use clauses than does Kansas, does not mean that this court should deem one of the state's laws as controlling over the other. While this operates to the benefit of KFB and the detriment of Mid–Continent under these particular factual circumstances, both insurance companies are only getting the result they are deemed to have bargained for under the law of the state in which they issued the insurance contracts.

IT IS, THEREFORE, BY THE COURT ORDERED THAT the motion for summary judgment filed by third party defendant KFB (Doc. # 202) is granted. The third party complaint filed by third party plaintiffs Pack, P & H and Omega is hereby be dismissed.

IT IS SO ORDERED.

---

ing has been brought to our attention to indicate that Oklahoma courts or its legislature, since that decision, have disavowed that reading of the "using" definition.